Argued and submitted February 11, 1999, reversed and remanded in part;
otherwise affirmed June 28, 2000

Jack C. OLDHAM
and Jennet C. Oldham,
husband and wife,
*Respondents,*

*v.*

Richard W. FANNO
and Maureen M. Fanno,
dba Mr. X's Swap Shop,
*Appellants.*

Richard W. FANNO
and Maureen M. Fanno,
dba Mr. X's Swap Shop,
*Appellants,*

*v.*

Jack C. OLDHAM
and Jennet C. Oldham,
husband and wife,
*Respondents.*

(97-CV-0066; CA A101682)

7 P3d 672

574

James H. Boldt argued the cause and filed the briefs for appellants.

Kim L. Jordan argued the cause and filed the brief for respondents.

Before Edmonds, Presiding Judge, and Armstrong and Kistler,* Judges.

* Kistler, J., *vice* Warren, P. J., retired.

ARMSTRONG, J.

## ARMSTRONG, J.

Defendants appeal from a judgment that declared that plaintiffs have control of a freestanding signpost that is located on land defendants lease from plaintiffs and that denied relief on defendants' counterclaim for breach of the parties' lease. They assign error to the trial court's conclusion that the lease gives plaintiffs control over the signpost. They also assign error to the trial court's finding that they failed to prove damages for plaintiffs' breach of the lease. We reverse as to the declaration but affirm as to the counterclaim for damages.

Defendants operate a secondhand store called Mr. X's Swap Shop in the portion of a commercial building that they lease from plaintiffs. Defendants bought the business from plaintiffs in 1991 and entered into a lease of the premises. In addition to the secondhand store, defendants also bought a second business, Mr. X's Flea Market, from plaintiffs, which they operated for a short time and then closed. The original lease encompassed the entire building and the grounds surrounding it. In 1996, defendants sought a reduction of their rent, and the parties agreed that defendants would relinquish the flea market portion of the building and grounds in exchange for a reduction. The amended lease did not address a signpost on the property that previously had been used to advertise both the flea market and the secondhand store. However, the lease provided that defendants would retain control over the portion of the grounds to the east of the secondhand store. The signpost was located within that portion of the grounds. At trial, plaintiffs sought and received a declaration that they retained control of the signpost, including the right to move and add signs to it.

Defendants' counterclaim for damages concerns plaintiffs' removal of a sign that was attached to a covered walkway outside the leased building. In 1996, the City of Grants Pass ordered the walkway covering to be removed because it had deteriorated beyond repair. Plaintiffs complied and removed both the covering and the sign. Defendants believed that, once the sign was removed, it could not be reattached because, due to its size, it violated a city sign

ordinance.[1] The evidence presented at trial suggests that plaintiffs were slow in making repairs on the building and that, had the covering been properly maintained, it would not have had to be removed. Defendants sought damages for lost business profits due to the removal of the sign. Although the trial court found that plaintiffs' removal of the sign breached the lease, it also found that defendants' evidence of damages was not sufficiently definite to warrant an award of lost profits.

On review, we hold that the terms of the lease granted defendants control over the signpost. We therefore reverse the declaration. However, because defendants failed to preserve their assignment of error as to their counterclaim for damages, we affirm as to the counterclaim.

■■■  The facts relevant to the declaratory judgment action are undisputed. We therefore review the trial court's construction of the lease for errors of law. The amended lease reduced the space that defendants leased to "that area of building which fronts 7th St.* * * plus all surrounding area adjacent to that part of building and legally owned by lessors." Although the signpost was within the area described in the amended lease, the trial court held that plaintiffs nonetheless retained control over it. That holding is contrary to established landlord-tenant law. The Supreme Court has held that a fundamental component of any lease is that "the lessee must have exclusive possession." *Sproul et al v. Gilbert et al*, 226 Or 392, 403, 359 P2d 543 (1961) (citations and internal quotation marks omitted). It further explained that "as against the lessor the exclusiveness of possession may vary *depending upon the restrictions imposed upon the transferee's use by the creating instrument*" and that, in the absence of explicit restrictions, the landlord would still have the right to enter the premises to make repairs and to collect rent. *Id.* at 403 (emphasis added). It follows from *Sproul* that, if the lease contains no explicit reservations in favor of the landlord, the landlord has only the right to enter the premises to make repairs and to collect rent. In all other respects,

---

[1] Although the parties agree that the sign was in fact in violation of the ordinance, plaintiffs submitted evidence suggesting that the city might have allowed the sign to be reattached because it had been grandfathered in.

the lessee retains the right of exclusive possession. Thus, contrary to plaintiffs' argument, the fact that the lease does not mention the signpost suggests that defendants have control over it, rather than plaintiffs.

■■ Our holding on this issue is also in accord with the law on fixtures. A fixture is personal property that, "by being physically annexed or affixed to real property, becomes accessory to the real property and part and parcel of it." *Metropolitan Life Ins. Co. v. Kimball*, 163 Or 31, 44, 94 P2d 1101 (1939) (citations and internal quotation marks omitted). Whether a piece of property is a fixture depends on (1) whether it is physically annexed to the real property, (2) whether it is specifically adapted to the property, and (3) whether the party attaching it objectively intended it to become part of the property when she attached it. *Id.* at 44-45. Of the three factors, the objective intent of the annexor at the time of annexation is by far the most important. *See Alberson v. Mining Co.*, 39 Or 552, 559-60, 65 P 978 (1901). Moreover, "[w]here the landowner affixes articles to the real property that are appropriate to the use of the property, * * * an implication arises that" she intended them to be treated as part of the realty. George W. Thompson, 1 *Commentaries on the Modern Law of Real Property* § 59, at 213 (John S. Grimes, ed., 1980).

■■ Here, plaintiffs' predecessor attached the signpost to the premises by setting it in concrete. It was thus physically annexed to the property. Although there is no evidence as to the second factor, whether the signpost was particularly adapted to the property, the third factor, whether the annexor objectively intended the item to become a fixture, cuts strongly in favor of the signpost's being a fixture. Here the annexor was the property owner, a fact that itself suggests the required objective intent. Moreover, the previous owner erected the signpost in a relatively permanent way outside the building at about the same time that he completed the building. The fact that the signpost was set in place when the building was completed suggests that the signpost was meant to be a permanent part of the property. Hence, the first and third factors strongly suggest that the signpost was a fixture. The second factor, about which there is little evidence, does not cut either way. We conclude that

the signpost was a fixture. Because a fixture is considered part of the realty itself, any tenant, such as defendants in this case, who has an exclusive right of possession to the portion of the property on which the fixture is located also has a right to the exclusive use of the fixture for the duration of the tenancy. Based on the terms of the lease and our conclusion that the signpost was a fixture, we reverse the trial court's declaration in favor of plaintiffs.

We now turn to defendants' second assignment of error. They contend that the trial court erred by failing to award damages for the removal of the sign that was attached to the covered walkway. Defendants sought damages for the decrease in their business revenue that occurred immediately after the attached sign was removed. They submitted evidence that their gross receipts had declined during that period, and they also submitted anecdotal evidence that some customers had had difficulty finding the store because of the lack of a sign. Plaintiffs in turn suggested that, because the business had not been profitable for any of the five years that defendants ran it, no lost profit damages were recoverable.[2] Plaintiffs further argued that defendants had failed to mitigate their damages and that factors other than the removal of the sign had caused the decline in defendants' gross revenue.

■      In order to preserve their second assignment of error, defendants had to make an appropriate motion at trial that sought a ruling as a matter of law on their entitlement to damages for plaintiffs' breach of the lease. *See Bend Tarp and Liner, Inc. v. Bundy*, 154 Or App 372, 376, 961 P2d 857, *rev den* 327 Or 484 (1998). They did not do that. Therefore, their claim of error is not preserved.

Reversed and remanded to enter declaration that defendants have the right to control the freestanding signpost; otherwise affirmed.

.

---

[2] Although defendants had made a profit of a few hundred dollars one year, they had not deducted any payments for their own services.