DELTA LOGISTICS, INC.,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT TAX SECTION,
*Respondent.*

Employment Department
2014UIT00047; A158021

379 P3d 783

Brad S. Daniels argued the cause for petitioner. On the opening brief was Jeffrey M. Wong. With him on the reply brief was Stoel Rives LLP.

Judy C. Lucas, Assistant Attorney General, argued the cause for the respondent. With her on the briefs were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Garrett, Judge.

## GARRETT, J.

In this petition for judicial review, Delta Logistics, a "for-hire" interstate motor carrier, challenges an order of an administrative law judge (ALJ) for the Office of Administrative Hearings upholding the Employment Department's assessments of unemployment insurance taxes based on payments that Delta made to owner-operator truck drivers for the audit period from the third quarter of 2009 through the fourth quarter of 2010. We review the ALJ's order for substantial evidence and errors of law, ORS 183.482(8)(a); ORS 657.684 (providing for judicial review as in review of orders in contested cases in ORS chapter 183), and reverse the assessments.

The department's tax assessments are *prima facie* correct, ORS 657.683(4), and an entity challenging an assessment has the burden to establish that it was not the employer of the person performing the services or that the payments subject to the assessment are excluded from taxation for some other reason. *Mitchell Bros. v. Emp. Div.*, 284 Or 449, 451, 587 P2d 475 (1978).

The facts are largely undisputed. Delta is a for-hire carrier as defined in ORS 825.005(7)(a),[1] and is licensed and authorized by the United States Department of Transportation (USDOT) to provide interstate motor transport. Under federal law, to ship freight in interstate commerce, a motor carrier must register with and be authorized by USDOT, and must comply with regulations promulgated by USDOT. A motor carrier may provide interstate transport services with leased vehicles, in compliance with federal statutes

---

[1] ORS 825.005(7) provides:

"'For-hire carrier' means:

"(a) Any person who transports persons or property for hire or who publicly purports to be willing to transport persons or property for hire by motor vehicle; or

"(b) Any person who leases, rents or otherwise provides a motor vehicle to the public and who in connection therewith in the regular course of business provides, procures or arranges for, directly, indirectly or by course of dealing, a driver or operator therefor."

and regulations. 49 USC § 14102;[2] 49 CFR § 376.11; 49 CFR § 376.12.[3]

---

[2] 49 USC section 14102(a) provides:

"General authority of Secretary. The Secretary may require a motor carrier providing transportation subject to jurisdiction under subchapter I of chapter 135 [49 USCS section 13501] that uses motor vehicles not owned by it to transport property under an arrangement with another party to—

"(1) make the arrangement in writing signed by the parties specifying its duration and the compensation to be paid by the motor carrier;

"(2) carry a copy of the arrangement in each motor vehicle to which it applies during the period the arrangement is in effect;

"(3) inspect the motor vehicles and obtain liability and cargo insurance on them; and

"(4) have control of and be responsible for operating those motor vehicles in compliance with requirements prescribed by the Secretary on safety of operations and equipment, and with other applicable law as if the motor vehicles were owned by the motor carrier."

[3] 49 CFR section 376.11(a) provides that an authorized carrier may perform authorized transportation in equipment that it does not own through "a written lease granting the use of the equipment and meeting the requirements contained in § 376.12." 49 CFR section 376.12 provides, in turn:

"[T]he written lease required under § 376.11(a) shall contain the following provisions. The required lease provisions shall be adhered to and performed by the authorized carrier.

"(a) Parties—The lease shall be made between the authorized carrier and the owner of the equipment. The lease shall be signed by these parties or by their authorized representatives.

"(b) Duration to be specific—The lease shall specify the time and date or the circumstances on which the lease begins and ends. These times or circumstances shall coincide with the times for the giving of receipts required by § 376.11(b).

"(c) Exclusive possession and responsibilities—

"(1) The lease shall provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease.

"* * * * *

"(4) Nothing in the provisions required by paragraph (c)(1) of this section is intended to affect whether the lessor or driver provided by the lessor is an independent contractor or an employee of the authorized carrier lessee. An independent contractor relationship may exist when a carrier lessee complies with 49 U.S.C. 14102 and attendant administrative requirements.

"(d) Compensation to be specified—The amount to be paid by the authorized carrier for equipment and driver's services shall be clearly stated on the face of the lease or in an addendum which is attached to the lease. * * * The amount to be paid may be expressed as a percentage of gross revenue, a flat rate per mile, a variable rate depending on the direction traveled or the type of commodity transported, or by any other method of compensation mutually

Delta does not own transport vehicles. During the audit period in question, Delta leased vehicles and used the services of approximately 40 contract drivers to make deliveries for customers within the continental United States and Canada. The drivers, in turn, either owned or leased their vehicles (owner-operators) or were hired by persons who owned or leased their vehicles.

Delta's agreements with owner-operators consisted of two documents:[4] A "Lease Agreement" provided that the owner-operator "leased" the vehicle to Delta.[5] The lease agreement did not separately describe the consideration for use of the vehicle.[6] Another document, entitled "Owner Operator Contract," stated that the owner-operator provided transportation services to Delta under Delta's carrier license and described Delta's compensation to the owner-operator, based on a percentage of gross revenue (less expenses) from the haul under Delta's carrier authority.[7]

In upholding the department's assessments, the ALJ determined that the services provided to Delta by the owner-operators[8] constituted taxable employment under ORS 657.040(1),[9] that Delta's payments for those services

agreed upon by the parties to the lease. The compensation stated on the lease or in the attached addendum may apply to equipment and driver's services either separately or as a combined amount."

[4] All of Delta's agreements were substantively identical to the sample documents in the record to which we refer.

[5] The lease agreement stated:

"The lessor [owner operator] does hereby lease and let into the lessee the following vehicle[.]"

[6] But, curiously, the lease agreement provided for the owner-operator's "rental" payment of $1 per month to Delta, "for the vehicle listed *** running lessee's authority *** until lessor receives own authority to operate as a for hire carrier."

[7] The contract described the owner-operator's remuneration as "90% of gross revenue, if using Carrier's authorities & plus insurance[.]"

[8] The order also upheld assessments of unemployment tax for wages paid to dispatchers and office workers. Delta does not dispute those aspects of the assessments on judicial review.

[9] ORS 657.040(1) provides:

"Services performed by an individual for remuneration are deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the Director of the Employment Department that the individual is an independent contractor, as that term is defined in ORS 670.600."

constituted wages within the meaning of ORS 657.105(1),[10] and that Delta was an employer during the audit period within the meaning of ORS 657.025(1).[11]

Delta asserted that the services provided by its owner-operators were not employment under ORS 657.047,[12] which exempts from employment "[t]ransportation performed by motor vehicle for a for-hire carrier by any person that leases their equipment to a for-hire carrier and that personally operates, furnishes and maintains the equipment and provides service thereto." In the order, the ALJ stated that the evidence was undisputed that Delta was a for-hire carrier, that it did not own trucks, and that the vehicles used to transport goods were furnished by the owner-operators, who either personally operated them or provided drivers for them. The ALJ also found that the owner-operators maintained their vehicles.

The ALJ nonetheless concluded that the ORS 657.047 exemption was not applicable because Delta's agreement with the owner-operators did not constitute a "lease" of the vehicle to Delta, as required by that statute. In the absence of a definition for "lease" in ORS chapter 657, the ALJ applied the "ordinary" meaning of the term. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d

---

[10] ORS 657.105(1) defines "wages" as

"all remuneration for employment, including the cash value, as determined by the Director of the Employment Department under the regulations of the director, of all remuneration paid in any medium other than cash."

[11] ORS 657.025(1) defines "employer" as

"any employing unit which employs one or more individuals in an employment subject to this chapter in each of 18 separate weeks during any calendar year, or in which the employing unit's total payroll during any calendar quarter amounts to $1,000 or more."

[12] ORS 657.047 provides, in part:

"(1) As used in this chapter, 'employment' does not include:

"* * * * *

"(b) Transportation performed by motor vehicle for a for-hire carrier by any person that leases their equipment to a for-hire carrier and that personally operates, furnishes and maintains the equipment and provides service thereto.

"(2) For the purposes of this chapter, services performed in the operation of a motor vehicle specified in subsection (1) of this section shall be deemed to be performed for the person furnishing and maintaining the motor vehicle."

1143 (1993) (words of common usage should be given their plain, natural, and ordinary meaning). Citing *Black's Law Dictionary* and the definition of "lease" in ORS 72A.1030(1)(j), the ALJ reasoned that a lease for purposes of ORS 657.047 must transfer the "possession and use" of the vehicle, in exchange for payment of compensation. *See also Thomas v. Foglio*, 225 Or 540, 553, 358 P2d 1066 (1961) (in determining whether "legal possession" of a truck had passed so as to give rise to a lease, the court seeks to determine "which party has that measure of control of the equipment which the law regards as the more significant"). The agreement that Delta had with its owner-operators, the ALJ concluded, did not give rise to a transfer of legal possession and use of the vehicle in exchange for compensation.

The ALJ rejected Delta's contention that the legislative history of ORS 657.047 shows an intention to give "lease" an industry-specific meaning different from its ordinary meaning. *See Zimmerman v. Allstate Property and Casualty Ins.*, 354 Or 271, 280, 311 P3d 497 (2013) (when a term has acquired a specialized meaning in a particular industry or profession, the court assumes that the legislature used the term consistently with that specialized meaning). The ALJ reasoned that usage in the trucking industry did not have any bearing on Oregon's unemployment insurance taxation scheme and concluded Delta had not met its burden to show that the Oregon legislature intended a specialized rather than ordinary meaning for the term "lease."

But the ALJ nonetheless reasoned that, even under the trucking industry definition of "lease," Delta's agreements with owner-operators were not sufficient to qualify for the ORS 657.047 exemption. The ALJ noted that 49 CFR section 376.2(e), which applies to interstate motor carriers, defines a lease as "[a] contract or arrangement in which the owner grants the use of equipment, with or without driver, for a specified period to an authorized carrier for use in the regulated transportation of property, in exchange for compensation." The ALJ cited federal regulations that require that a lease of equipment to a motor carrier for interstate transport transfer "exclusive possession and control" of the equipment in exchange for compensation. 49 CFR § 376.12(c)(1). The ALJ concluded that Delta's agreement

with owner-operators failed as a lease because it did not transfer possession and control, and did not provide compensation to the owner-operator for use of the vehicle.

On judicial review, Delta challenges the ALJ's interpretation of ORS 657.047. Instead of making a textual argument, Delta asserts that the ALJ's interpretation is inconsistent with the statute's legislative history, which, Delta continues to argue, shows an intention to apply the meaning of "lease" as it is understood within the interstate trucking industry. Delta notes that the federal regulation's definition of "lease," 49 CFR section 376.2(e), does not include an explicit requirement for a transfer of possession and control of the equipment. But, Delta neglects to mention the other regulations that do impose such a requirement. For example, 49 CFR section 376.12 requires that a lease "provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease." Delta does not explain how, if at all, the federal requirement for "exclusive possession, control, and use" differs substantively from the definition of lease applied by the ALJ. Instead, Delta asserts that its leases necessarily complied with ORS 657.047 because they have been approved for intrastate and interstate transport by state and federal regulatory authorities.

With respect to the issue of compensation for use of the vehicle, Delta asserts that the documents must be considered in their entirety and that, when so construed, they unambiguously provide compensation to the owner-operators for the driver's services *and* for the use of the vehicles.

Finally, Delta contends that, if and to the extent that the documents are "defective" because they do not contain all of the elements required for a lease, it is the nature of the underlying relationship that controls, as shown through the documents interpreted as a whole and evidence extrinsic to the documents presented at the hearing. Delta contends that that evidence shows that its relationship with the owner-operators qualifies as a lease under Oregon law.[13]

---

[13] Delta also contends that, because its relationship with owner-operators complies with state and federal trucking regulations, it should necessarily be

In addressing Delta's contentions on judicial review, we begin with the disputed statutory text. *State v. Gaines,* 346 Or 160, 171-72, 206 P3d 1042 (2009) (setting forth familiar interpretive methodology, examining the statute's text, context, and relevant legislative history, as well as any applicable maxims of statutory construction, to determine the legislature's intent in enacting a statute). ORS 657.047(1) provides an exemption from employment for "[t]ransportation performed by motor vehicle for a for-hire carrier by any person that leases their equipment to a for-hire carrier and that personally operates, furnishes and maintains the equipment and provides service thereto." At the outset, we observe that, assuming the applicability of the ordinary definition of a "lease," the statutory text sets forth seemingly contradictory requirements: the owner/lessor must both "lease" the truck to the for-hire carrier and retain rights that are ordinarily considered to be interests transferred to the lessee—the physical possession and control of the vehicle through operation and maintenance. *See Thomas,* 225 Or at 553 (generally, the right to control over the chattel is determinative of whether the parties intended a lessor-lessee relationship). *See also Oldham v. Fanno,* 168 Or App 573, 576, 7 P3d 672 (2000) (a fundamental component of any lease is that "the lessee must have exclusive possession") (quoting *Sproul et al v. Gilbert et al,* 226 Or 392, 403, 359 P2d 543 (1961) (citations and internal quotation marks omitted)); *Weathers v. M. C. Lininger & Sons,* 68 Or App 30, 35, 682 P2d 770 (1984) (in general, to create a leasehold interest the lessee must be granted the right of possession).

We have previously construed ORS 657.047. In *3P Delivery, Inc. v. Employment Dept. Tax Section,* 254 Or App 180, 183, 295 P3d 83 (2012), we said that the exemption of ORS 657.047 applies

> "when a person (1) leases their equipment to a for-hire carrier; (2) performs transportation services for that for-hire carrier; and (3) personally operates, furnishes and maintains the equipment."

---

sufficient under Oregon's unemployment compensation law, and that the department was unreasonable in, or should be estopped from, determining otherwise.

*3P Delivery* involved an arrangement whereby drivers leased vehicles from a for-hire motor carrier and then "leased" those vehicles back to the for-hire carrier. We explained in that case that the requirement in ORS 657.047 that persons lease "their equipment" means that the person furnishing the vehicle to the for-hire carrier must have a transferable interest in the vehicle. 254 Or App at 188-89. We held in *3P Delivery* that in the lease/lease-back arrangement in that case, the driver did not have an interest that could be "furnished" to the for-hire carrier and, therefore, the arrangement did not meet the requirements for the exemption. *Id.* But we have not otherwise considered the meaning of the term "lease" as used in the context of ORS 657.047. In particular, *3P Delivery* did not require us to decide whether the legislature intended "lease" to have its ordinary meaning, or, instead, a specialized meaning understood within the trucking industry. As the ALJ correctly observed, in the absence of a statutory definition or an indication that the legislature intended a specialized meaning, the ordinary meaning of lease would apply.

Here, there is a statutory definition of lease that the department asserts applies. The definitions of the Uniform Commercial Code—Leases, contained in ORS chapter 72A, apply "to any transaction, regardless of form, that creates a lease," "unless context requires otherwise." ORS 72A.1020(1); ORS 72A.1030(1). ORS 72A.1030(1)(j), in turn, defines a lease as "a transfer of the right to possession and use of goods for a term in return for consideration." "Goods" are defined as "all things that are movable at the time of identification to the lease contract[.]" ORS 72A.1030(1)(h). As Delta points out, Oregon enacted the UCC definition of "lease" two years after it enacted ORS 657.047 and, for that reason, ORS 72A.1030(1)(j) does not shed light on the legislature's intentions with respect to the meaning of "lease" in ORS 657.047. But trucks are "goods" within the meaning of ORS 72A.1030(1)(h), and it would appear that ORS 72A.1030(1)(j) therefore applies to the transaction described as a lease in ORS 657.047, unless context requires otherwise. ORS 72A.1030(1).

Delta asserts that "context requires otherwise," because the legislative history shows an intention to apply

the trucking-industry definition of the term "lease" in ORS 657.047. We have reviewed the legislative history of the bill that resulted in ORS 657.047, and it could be read to support Delta's view that the proponents of the bill had in mind a meaning for the term "lease" unique to the trucking industry and one that is different from the arrangement that one ordinarily thinks of as a lease.[14] On the other hand, the legislature did not purport to give that term a special meaning within the text of the statute as enacted. In any event, we need not decide whether a specialized meaning was intended. As noted, the federal law cited by Delta, like ORS 72A.1030(1)(j), requires that a lease transfer possession and use of the equipment. 49 CFR § 376.12(c)(1).[15] We note, additionally, that the Oregon Department of Transportation has promulgated administrative rules governing vehicles operated in Oregon under lease by for-hire carriers, and those rules, like the federal regulations, require that the lease document provide that, with certain exceptions, "the lessee has the right to exclusive possession, use, and control of the leased vehicle[,]" OAR 740-045-0100(2)(c); OAR 740-045-0110(2)(c).[16] Delta does not explain, and we are hard pressed to understand, how the definition of lease in ORS 72A.1030(1)(j) conflicts with the definition that applies in the trucking industry. Substantively, there does not appear to be a significant distinction between the definition of "lease" in ORS 72A.1030(1)(j) and the definition under either state or federal trucking law.

But that does not resolve the question whether, as a textual matter, the definition of lease in ORS 72A.1030(1)(j) can logically apply in the context of ORS 657.047. Is there an inherent conflict in defining "lease" to require a

---

[14] Senator Lenn Hannon, a sponsor of the bill ultimately enacted as ORS 657.047, agreed with a Conference Committee staff member's characterization of the term "lease" as "a legal term of art" that has "a different meaning than the word 'lease' like if you were going to rent an apartment." Tape Recording, Conference Committee, HB 3283, June 23, 1987, Tape 1, Side A (statement of Sen Lenn Hannon).

[15] The federal regulation also requires a transfer of "control." 49 CFR § 376.12(c)(1).

[16] They further require that the lessee "*exercise* exclusive supervision and control" of the leased vehicle. OAR 740-045-0100(3); OAR 740-045-0110(3) (emphasis added).

transfer of possession and use while also requiring the owner/lessor to operate and maintain the vehicle? Our goal is to construe the statute to give legal effect to all of its provisions. *Quintero v. Board of Parole*, 329 Or 319, 324, 986 P2d 575 (1999); *see* ORS 174.010 ("[W]here there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all."); *see also Force v. Dept. of Rev.*, 350 Or 179, 190, 252 P3d 306 (2011) ("Statutory provisions *** must be construed, if possible, in a manner that will give effect to all of them." (Internal quotation marks omitted.)). We think that the seemingly conflicting requirements of ORS 657.047 can be reconciled by interpreting "lease," as used in ORS 657.047, to require a transfer to the for-hire carrier of *legal* possession and use of the vehicle, but the retention of physical possession, control, and use by the lessor for the purposes of operation and maintenance of the vehicle. That is an arrangement that parties to a lease can bargain for. *See Phillips v. Rathbone*, 194 Or App 90, 99, 93 P3d 835 (2004) (the lease determines the terms of any reservations of a right of use by the landlord in the leased premises). To the extent that the two requirements appear to be contradictory because "legal possession" ordinarily follows from physical possession, control, and use, *see Thomas*, 225 Or at 553 (determining "legal possession" of a truck based on evidence of physical control and use), that is a contradiction required by the text of the statute. We need not decide here whether, as the department contends, the definition of "lease" in ORS 72A.1030(1)(j) applies to ORS 657.047. Suffice it to say that an arrangement that has the effect of transferring to the for-hire carrier the right to legal possession and use of the vehicle, while requiring the owner to retain physical possession, control, and use of the vehicle, satisfies the requirements for a lease under ORS 657.047.

We conclude further that Delta's agreements with the owner-operators are properly construed to include a transfer of legal possession and use in return for consideration. No particular words are necessary to create a lease. *See Port of Coos Bay v. Dept. of Rev.*, 298 Or 229, 234, 691 P2d 100 (1985) ("If the agreement grants sufficient control over the premises to fulfill the requirement of possession, a leasehold interest is created."). The "lease agreement" states

that it "leases" the vehicle to Delta and uses terms commonly associated with leases, like "lessor" and "lessee." That is somewhat persuasive evidence that the parties intended to enter into a lease. *Ore. Summer Hm. Owners v. Johnson,* 265 Or 544, 546, 510 P2d 344 (1973) (while the terminology of a "lease" is not controlling, it is somewhat persuasive of an intention to grant a possessory interest).

But, the department is correct that the parties' agreement must be construed as a whole to determine whether the parties intended to create a lease that transferred to Delta an interest sufficient to constitute a lease under ORS 657.047. *Sproul,* 226 Or at 403 ("The mere fact that the parties describe an instrument as a lease does not conclusively establish the existence of a leasehold interest."); *Thomas,* 225 Or at 552. *See Strandholm v. Barbey,* 145 Or 427, 441, 26 P2d 46 (1934) (in determining the intention of the parties, courts construe "the whole mass of words and not merely some of them"); *Logan v. D. W. Sivers Co.,* 343 Or 339, 347, 169 P3d 1255 (2007) (the substance of an agreement, not its label, determines its legal effect); *Eggen et ux. v. Wetterborg et al.,* 193 Or 145, 153, 237 P2d 970 (1951) ("Such construction should be given the agreement, if possible, as will render all of its clauses harmonious, so as carry into effect the actual purpose and intention of the parties as derived from them." (citing *Dellwo v. Edwards,* 73 Or 316, 323, 144 P 441 (1914))).

It is true, as the ALJ found and as the department contends, that, although the lease agreement states that it is a lease and that it "leases" the vehicle to Delta, it does not explicitly transfer legal possession, control, and use of the vehicle to Delta. Nor does the Owner Operator Contract include a requirement for the transfer of legal possession, control, and use. Further, although the Owner Operator Contract includes provisions for remuneration, there is no separate allocation of compensation for use of the equipment. Additionally, as noted, the lease agreement contains a curious provision requiring the *lessor* to pay rental of $1 per month to Delta. But, considering the "whole mass" of words of both the lease agreement and the Owner Operator Contract, *Strandholm,* 145 Or at 441, we reject the ALJ's conclusion that it can only be construed as creating a lease

*from Delta to the owner operator.* The most that can be said is that the text of the agreement, construed as a whole, is ambiguous.

Given the agreement's ambiguity, it must be interpreted in light of the surrounding circumstances so as to effectuate the parties' intentions. *National Union Fire Ins. Co. v. Starplex Corp.*, 220 Or App 560, 576, 188 P3d 332 (2008); ORS 42.220 ("In construing an instrument, the circumstances under which it was made, including the situation of the subject and of the parties, may be shown so that the judge is placed in the position of those whose language the judge is interpreting."); *see also* ORS 72A.1030(1)(k) (defining a "lease agreement" as "the bargain, with respect to the lease, of the lessor and the lessee in fact as found in the language or by implication from other circumstances including course of dealing or usage of trade or course of performance as provided in this chapter").

It is undisputed that the parties' intentions were to enter into a relationship that complied with the requirements relating to the lease of vehicles by interstate motor carriers, so that the owner-operators could transport goods under Delta's interstate motor carrier license.[17] In light of that undisputed intention, the fact that the lease does not explicitly transfer to Delta a right to legal possession, control, and use of the vehicle is not dispositive. The "lease" portion of the agreements does not restrict Delta's leasehold interest, and we therefore interpret it so as to comply with the parties' intentions and to encompass a transfer to Delta of a right to legal possession and use of the vehicle. *See Oldham*, 168 Or App at 577 (a lease that did not include any specific reservation of interest provided the lessee with exclusive possession and control of a sign post). If Delta acquired a right to legal possession and use of the vehicle, then it follows that the arrangement was sufficient to constitute a "lease" under ORS 657.047 as we have construed it.

The ALJ also concluded that Delta's agreements with the owner-operators did not qualify as leases because

---

[17] The department has conceded that Delta's agreements with its owner operators satisfied federal requirements for the lease of a vehicle by interstate motor carriers.

the lease agreements themselves did not include a provision for remuneration for Delta's use of the vehicles. But the Owner Operator Contract does, in fact, include a provision for remuneration; it provides for payment to the owner-operator based on a percentage of the tariff. Although the agreement does not explicitly allocate a portion of the remuneration to the lease of the vehicle, we are not aware of a requirement in the law that a lease include such an allocation.[18] *See Market Transport, Ltd. v. Employment Dept.*, 279 Or App 515, 527-28, 379 P3d 608 (2016) (holding that agreements not specifically providing consideration were not categorically ineligible under ORS 657.047). We conclude that the ALJ erred in concluding that there was an absence of remuneration for use of the equipment simply because that component of consideration was not separately stated.

The department contends that the ALJ's order should be affirmed as to those owner-operators who did not drive the vehicles themselves but who hired drivers, because of the requirement in ORS 657.047 that the owner-operator "personally" operate the vehicle. In the department's view, the exemption is inapplicable to services provided by persons who are hired by owner-operators.[19] On judicial review, Delta contends that ORS 657.047 necessarily contemplates that owner-operators will hire drivers and that the legislature intended the exemption to apply in that circumstance.

Once again, we consider the statutory text:

"(1) As used in this chapter, 'employment' does not include:

"* * * * *

"(b) Transportation performed by motor vehicle for a for-hire carrier by any person that leases their equipment to a for-hire carrier and that *personally operates, furnishes and maintains the equipment and provides service thereto.*

[18] We note that federal regulations permit the payment to be stated as a percentage of revenue and "either separately or as a combined amount." 49 CFR § 376.12(d) (279 Or App at 501 n 3).

[19] The ALJ did not reach this issue, having concluded that the exemption did not apply because of the lack of a lease. Delta contends that the department conceded the issue before the ALJ and that it is not preserved, but our review of the record shows that the department did raise the issue before the ALJ and did not concede it. Thus, we address it as a possible alternate basis for affirmance.

"(2) For the purposes of this chapter, services performed in the operation of a motor vehicle specified in subsection (1) of this section shall be deemed to be performed for the person furnishing and maintaining the motor vehicle."

ORS 657.047 (emphasis added). In the department's view, the italicized text means that the exemption is available only when an owner-operator "personally" operates the leased vehicle, *i.e.*, the owner-operator is also the driver. The department contends that ORS 657.047(2) must be read in that context and does not create an exception to ORS 657.047(1)(b)—it simply clarifies that an owner-operator who personally performs services in operation of the vehicle performs them for him or herself, rather than for the for-hire carrier. Thus, in the department's view, the two subsections read together do not contemplate an exemption from employment if the owner-operator does not personally operate the vehicle. Under the department's interpretation, if an owner-operator leases several trucks to a for-hire motor carrier for interstate transport and maintains them but provides hired drivers for their operation, the exemption does not apply and the drivers are employees of the for-hire motor carrier, assuming that the circumstances otherwise give rise to an employment relationship under ORS 657.040.

Delta responds that, if the person who performs the services in operation of a motor vehicle under ORS 657.047(2) must be the same person who leases the vehicle to the for-hire carrier under ORS 657.047(1)(b), then there is no reason for ORS 657.047(2) or for its separate reference to "services performed in operation of a motor vehicle." In Delta's view, ORS 657.047(2) implicitly recognizes that a driver may not always be the same person as the owner-operator, and expresses the intention that the exemption apply when other persons are hired by an owner-operator to perform service in operation of a motor vehicle.

Both the department's and Delta's interpretations are plausible. A literal reading of the statute could mean, as the department contends, that a person who "performs services in operation of a motor vehicle" under ORS 657.047(2) is necessarily the owner-operator who *personally* operates the vehicle. But, viewing the two subsections of ORS 657.047

together, we conclude that Delta's interpretation makes better logical sense. By referring in ORS 657.047(2) to "services performed in operation of the motor vehicle," the legislature intended to refer to the operation of the vehicle. And, by stating that those services are performed *for the person* furnishing and maintaining the motor vehicle, the legislature implicitly recognized that the services performed in operation of a motor vehicle may be performed by someone other than the person furnishing and maintaining the motor vehicle. For that reason, we conclude, contrary to the department's contention, that Delta is not the employer of drivers hired by owner-operators to provide services under ORS 657.047(1)(b).[20]

In view of our conclusion that the transportation services provided to Delta by owner-operators or their hired drivers were exempt from employment by Delta under ORS 657.047, we need not address Delta's additional contention that the ALJ erred in concluding that the services provided by the owner-operators were exempt from employment under ORS 657.040(1), as services provided by independent contractors.

Assessments for the third quarter of 2009 through the fourth quarter of 2010 based on remuneration paid to drivers reversed and remanded; otherwise affirmed.

---

[20] Those drivers could, however, be the employees of the owner-operators who hired them.