Argued and submitted December 19, 2014; assessments as to owner-drivers reversed and remanded, assessments as to lessee-drivers vacated and remanded July 20, 2016

MARKET TRANSPORT, LTD.,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT,
*Respondent.*

Office of Administrative Hearings
T71469; A153545

379 P3d 608

Thomas M. Christ argued the cause for petitioner. With him on the briefs were Julie A. Smith and Cosgrave Vergeer Kester LLP.

Judy C. Lucas, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

## GARRETT, J.

The question in this unemployment insurance taxation case is whether remuneration that petitioner Market Transport, Ltd., paid to truck drivers who performed interstate transport services pursuant to a "contract lease agreement" (agreement) is subject to payroll tax in Oregon. An administrative law judge (ALJ) for the Office of Administrative Hearings upheld the Employment Department's assessments of unpaid taxes and interest based on remuneration that Market Transport paid to drivers for a period from the third quarter of 2007 through the fourth quarter of 2010. Market Transport seeks judicial review of the ALJ's order, challenging the ALJ's determination that those services constitute "employment" that is not exempt under ORS 657.047(1)(b). We review the ALJ's order for errors of law and substantial evidence, ORS 183.482(8)(a) and (c), and conclude that the ALJ erred in determining that the drivers' services are not exempt under ORS 657.047. We therefore reverse the assessments and remand for reconsideration.

We provide a brief summary of the relevant facts from the ALJ's findings, which are not disputed. Market Transport is a "for-hire" carrier in the business of interstate freight transport under licensing and authority from the United States Department of Transportation (USDOT).[1] Market Transport enters into agreements with contract drivers, who either own or lease their vehicles, to provide interstate transport services for Market Transport under Market Transport's authority. Market Transport, in turn, compensates the drivers by paying a rate per mile and providing equipment, licensing, insurance, and administrative support.

Market Transport uses the services of two categories of contract drivers—those who own their own vehicles and those who lease their vehicles from third parties. The issues on judicial review concern both types of contract drivers, all of whom are engaged by Market Transport through a

---

[1] Under federal law, to ship freight in interstate commerce, a motor carrier must be licensed by and registered with the USDOT, 49 USC §§ 13901, 13902, and must comply with regulations promulgated by the USDOT, 49 USC § 13902(a)(1).

standard "Contractor Lease Agreement." That agreement states:

"As required by regulations of the United States Department of Transportation ('DOT'), this Agreement recites that Contractor's Motor Vehicle is leased to Carrier for the exclusive possession, Control, and use of Carrier for the duration of the Agreement."[2]

As relevant here, the agreement provides that, while it is in effect, the contractor may not use the vehicle to provide services for any other entity, even when the vehicle is not in service to Market Transport. The contractor is responsible for all costs of vehicle maintenance and repair. The ALJ found that the agreement is "perpetual," and continues until terminated by Market Transport or by the contractor.

Market Transport pays for its interstate carrier authorization and license as well as insurance on the vehicle for the lease term, and it does not pass those costs on to the contractor. As an administrative convenience to the contractor, Market Transport advances the "Contractor's license fees, permit fees, prorate fees and federal highway tax fees" and "road use tax and fuel taxes applicable to Contractor's Motor Vehicle." But, under the agreement, those fees are ultimately the contractor's responsibility and Market Transport is entitled to charge them back to the contractor.

The remuneration paid by Market Transport is set forth in the agreement as follows:

"a.  **Basic Payments and Mileage:** *For the use of Contractor's Motor Vehicle, and for services to be performed by Contractor,* payments, including but not limited to the items described below, will be made based on additional information provided in related Attachments. Mileage will be computed by the Current Household Goods Carrier's

---

[2] When Market Transport leases the vehicle from a driver who owns the vehicle (an owner-driver), the agreement designates the owner-driver as the "contractor." When Market Transport leases the vehicle from a driver who is leasing the vehicle (a lessee-driver), the agreement designates both the lessee-driver and the vehicle owner as the "contractor," and both the lessee-driver and the vehicle owner must sign the agreement.

Bureau Mileage Guide on a point-to-point basis, based on date of dispatch.

"* * * * *

"c. **Length of Service Bonus:** In addition to Basic Mileage Contractor will be paid a 'Length of Service Bonus' per dispatched mile pursuant to Attachment A-1[.]"

(Emphasis added; boldface in original.) Attachment A-1 is a "Schedule of Lease Payments and Charges" that describes the base mileage rate per month, a length-of-service incentive bonus, a length-of-service credit for previous experience, and other payments for services during transit.[3] In short, the described payments are based on mileage, driver experience, and services provided by the driver while the vehicle is in service to Market Transport.[4] The agreement does not separately allocate consideration for the use of the vehicle itself. The absence of such a provision is in large part the origin of this litigation.

After an audit in 2011, the department determined that Market Transport's contract drivers were employees and that their services were "employment" within the meaning of ORS 657.040. ORS 657.047 provides an exemption from the definition of "employment" for services performed by persons who "lease" their vehicles to for-hire motor carriers. The department determined, however, that Market Transport's payments were not lease payments for use of the vehicle but were, instead, remuneration for the driver's services, and that the exemption therefore did not apply. The department issued notices of assessment for unpaid payroll taxes for the third quarter of 2007 through the fourth quarter of 2010, and the ALJ upheld the department's assessments.

---

[3] The agreement also provides that the contractor will be paid for "layover" under specific circumstances, as described in Attachment A-1, and that the contractor will be "charged back" for all unauthorized off-route miles, for "off duty" time, and for "the re-powering of one's load." In addition to those items, Attachment A-1 describes payments for stops in transit for picking up or delivering freight; for "make and break" of double trailers; for loading and unloading freight; for dropping or picking up loaded trailers; for additional trailer loading and unloading outside of Portland; for transferring full shipments; for miscellaneous work; and for layovers.

[4] When the driver is a lessee of the vehicle, Market Transport makes payments to the vehicle's owner, which subtracts the driver's monthly lease payment and sends the balance of the payment to the driver.

In addressing the issues raised by Market Transport on judicial review, we begin with a brief overview of the legal context. ORS 657.040(1) provides:

> "Services performed by an individual for remuneration are deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the Director of the Employment Department that the individual is an independent contractor, as that term is defined in ORS 670.600."

ORS 657.030(1) defines "employment" as "service for an employer * * * performed for remuneration or under any contract of hire, written or oral, express or implied."[5] ORS chapter 657 describes a number of exceptions to employment, among them the "for-hire carrier" exemption at issue here, ORS 657.047.

A body of federal law governs motor carriers and their use of leased vehicles for interstate transport. *See* 49 USC § 14102[6]; 49 CFR § 376.11; 49 CFR § 376.12.[7] A federal

---

[5] "Employer," in turn, is defined as "any employing unit which employs one or more individuals in an employment subject to this chapter." ORS 657.025. ORS 657.015 defines "employee" as any person "employed for remuneration or under any contract of hire, written or oral, express or implied, by an employer subject to this chapter in an employment subject to this chapter."

[6] 49 USC section 14102(a) provides:

"General authority of Secretary. The Secretary may require a motor carrier providing transportation subject to jurisdiction under subchapter I of chapter 135 [49 USCS section 13501] that uses motor vehicles not owned by it to transport property under an arrangement with another party to—

"(1) make the arrangement in writing signed by the parties specifying its duration and the compensation to be paid by the motor carrier;

"(2) carry a copy of the arrangement in each motor vehicle to which it applies during the period the arrangement is in effect;

"(3) inspect the motor vehicles and obtain liability and cargo insurance on them; and

"(4) have control of and be responsible for operating those motor vehicles in compliance with requirements prescribed by the Secretary on safety of operations and equipment, and with other applicable law as if the motor vehicles were owned by the motor carrier."

[7] 49 CFR section 376.11(a) provides that an authorized carrier may perform authorized transportation in equipment that it does not own through "a written lease granting the use of the equipment and meeting the requirements contained in § 376.12." 49 CFR section 376.12 provides, in turn:

"[T]he written lease required under § 376.11(a) shall contain the following provisions. The required lease provisions shall be adhered to and performed by the authorized carrier.

regulation, 49 CFR section 376.2(e), defines a lease in this context as "[a] contract or arrangement in which the owner grants the use of equipment, with or without driver, for a specified period to an authorized carrier for use in the regulated transportation of property, in exchange for compensation." When interstate transport is accomplished in a leased vehicle, federal law requires that the motor carrier "have exclusive possession, control, and use of the equipment for the duration of the lease." 49 CFR § 376.12(c)(1).[8] Under federal law, compensation for "the equipment and driver's services" can be based on mileage, and need not compensate for idle time. Additionally, federal regulations permit the compensation for the equipment and driver's services to be

---

"(a) Parties—The lease shall be made between the authorized carrier and the owner of the equipment. The lease shall be signed by these parties or by their authorized representatives.

"(b) Duration to be specific—The lease shall specify the time and date or the circumstances on which the lease begins and ends. These times or circumstances shall coincide with the times for the giving of receipts required by § 376.11(b).

"(c) Exclusive possession and responsibilities—

"(1) The lease shall provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease.

"* * * * *

"(4) Nothing in the provisions required by paragraph (c)(1) of this section is intended to affect whether the lessor or driver provided by the lessor is an independent contractor or an employee of the authorized carrier lessee. An independent contractor relationship may exist when a carrier lessee complies with 49 USC § 14102 and attendant administrative requirements.

"(d) Compensation to be specified—The amount to be paid by the authorized carrier for equipment and driver's services shall be clearly stated on the face of the lease or in an addendum which is attached to the lease. * * * The amount to be paid may be expressed as a percentage of gross revenue, a flat rate per mile, a variable rate depending on the direction traveled or the type of commodity transported, or by any other method of compensation mutually agreed upon by the parties to the lease. The compensation stated on the lease or in the attached addendum may apply to equipment and driver's services either separately or as a combined amount."

[8] We note that the Oregon Department of Transportation has adopted administrative rules that govern the use of leased vehicles by for-hire motor carriers for intrastate commerce. Those rules require the lease to provide that "the lessee has the right to exclusive possession, use, and control of the leased vehicle, with the exception that the lessor may use the vehicle for personal noncommercial uses with the permission of the lessee." OAR 740-045-0100(2)(c); OAR 740-045-0110(2)(c).

stated "either separately or as a combined amount." 49 CFR § 376.12(d).

Against that backdrop, the Oregon legislature in 1987 enacted the "for-hire" carrier exemption from employment. Or Laws 1987, ch 891, § 3. ORS 657.047 provides, in part:

"(1) As used in this chapter, 'employment' does not include:

"* * * * *

"(b) Transportation performed by motor vehicle for a for-hire carrier by any person that leases their equipment to a for-hire carrier and that personally operates, furnishes and maintains the equipment and provides service thereto.

"(2) For the purposes of this chapter, services performed in the operation of a motor vehicle specified in subsection (1) of this section shall be deemed to be performed for the person furnishing and maintaining the motor vehicle."[9]

Thus, under ORS 657.047, an exemption from employment exists when a person (1) leases "their equipment" to a for-hire carrier; (2) performs transportation services for the for-hire carrier; and (3) personally operates, furnishes and maintains the equipment. ORS 657.047(1)(b). The services performed in operation of the vehicle for the for-hire carrier are deemed to be performed for the person furnishing and maintaining the motor vehicle, rather than for the for-hire carrier. ORS 657.047(2). In other words, the person driving the vehicle is deemed to be an employee of the person furnishing and maintaining the vehicle and not an employee of the for-hire carrier. *3P Delivery, Inc. v. Employment Dept. Tax Section*, 254 Or App 180, 183, 295 P3d 83 (2012).

---

[9] ORS 825.005(7) defines a "for-hire carrier" as:

"(a) Any person who transports persons or property for hire or who publicly purports to be willing to transport persons or property for hire by motor vehicle; or

"(b) Any person who leases, rents or otherwise provides a motor vehicle to the public and who in connection therewith in the regular course of business provides, procures or arranges for, directly, indirectly or by course of dealing, a driver or operator therefor."

It is undisputed that Market Transport is a "for-hire carrier."

As upheld by the ALJ, the department's assessments determined that the services provided by contract drivers to Market Transport under the agreements were "employment" that did not fit within the exemption described in ORS 657.047(1)(b), for two reasons. First, the agreements were not "leases" within the meaning of Oregon law because they did not provide for consideration for the contract driver's forbearance of use of the vehicle during down time. Second, the lessee-drivers did not "furnish and maintain" the vehicles, as required by ORS 657.047(1)(b). Market Transport challenges each of those determinations on judicial review.

We first address Market Transport's contention that the ALJ erred in determining that the agreements were not "leases" within the meaning of ORS 657.047(1)(b). The ALJ reasoned that a "lease," which is not defined in the statute, should be interpreted based on its commonly understood meaning, as a type of contract for which there must be consideration.[10] *See Zimmerman v. Allstate Property and Casualty Ins.*, 354 Or 271, 279-80, 311 P3d 497 (2013) ("Ordinarily, when the legislature has not defined a statutory term, we assume that the legislature used its words consistently with their ordinary meanings."). The ALJ acknowledged that the agreements appear, at first glance, to be supported by consideration, but concluded that a close reading of the lease reveals that "consideration is lacking for the drivers' promise not to use the vehicle when the vehicle is not in use due to lack of work." The ALJ explained:

"The [agreement] prohibits the driver from using the leased vehicle to transport cargo for another for-hire carrier. When the vehicle is idle for lack of work, the driver is not compensated for the lease (for [Market Transport's] non-utilization). [Market Transport] promises nothing in return for the drivers' promise not to use their vehicle for some other purpose, even when [Market Transport] has no work for the driver. However, [Market Transport] has the right under the [agreement] to charge the driver $75 if [Market Transport] has work but the driver's vehicle is out of service for seven days because the driver is off-duty.

___

[10] The ALJ referred to a definition of "lease" in *Webster's Third New Int'l Dictionary* 1286 (unabridged ed 2002): "a contract by which one conveys lands, tenements, or hereditaments for life, for a term of years, or at will or for any less interest than that of the lessor, usu. for a specified rent or compensation."

[Market Transport's] Director of Human Resources Mike Olsen testified that [Market Transport] does not pay a 'flat rate' for use of the vehicle because [Market Transport] 'would not get the utilization' that it expects. Yet, [Market Transport] pays nothing for its non-utilization."

The ALJ reasoned, essentially, that a contractor is compensated for use of the vehicle based on mileage and is not compensated when the vehicle is not in service. The ALJ concluded, therefore, that there was no consideration for the driver's promise *not* to use the vehicle when it is not in service to Market Transport and, hence, no valid lease to support an exemption under ORS 657.047.[11]

Market Transport contends that the ALJ erred in determining that there is a lack of consideration for the lease because of a lack of *separate* consideration for the contractor's inability to use the vehicle when it is not being driven for Market Transport. Although the agreement does not separately describe compensation for idle time, Market Transport contends that contractors are, in fact, compensated for Market Transport's possession and use of the vehicle for the full duration of the lease, including idle time, through remuneration based on mileage, as well as through Market Transport's provision of equipment, licensing, insurance, and administrative support. Market Transport contends, further, that any lack of specific compensation for idle time would go to the adequacy—rather than the existence—of consideration for the lease, which Oregon courts do not ordinarily second guess in determining the existence of a contract. *See Pacific Pines Const. v. Young*, 257 Or 192, 197-98, 477 P2d 894 (1970) (citing with approval Samuel Williston, 1 *Contracts* § 115, 454 (3d ed 1960) for the "elementary principle," "almost as old as the law of consideration itself," that the law will not enter into an inquiry as to the adequacy of the consideration).

Market Transport has offered the legislative history of ORS 657.047 as context for our interpretation and in support of its view that, when the legislature enacted the

___

[11] The ALJ specifically rejected the department's additional rationale that the lease failed for lack of a specific duration, and the department does not challenge that determination on judicial review.

statute, it did so with an awareness of federal law relating to the leasing of vehicles by interstate motor carriers and with the intention that the term "lease" in ORS 657.047 have an industry-specific meaning, consistent with what constitutes a "lease" under federal trucking law. Market Transport contends that the ALJ's conclusion that the lease lacks consideration is inconsistent with that specialized meaning of a lease which, under federal law, need not compensate drivers for times when the vehicle is idle and no miles are being recorded. *Zimmerman*, 354 Or at 280 ("When the term has acquired a specialized meaning in a particular industry or profession * * * the court assumes that the legislature used the term consistently with that specialized meaning.")

The department responds that the department's tax assessments are *prima facie* correct, and that Market Transport has not met its burden to establish that it was not the drivers' employer. ORS 657.683(4).[12] Citing the definition of "lease" in ORS 72A.1030(1)(j) (a "lease" is "a transfer of the right to possession and use of a good for a term in return for consideration"), and case law defining "consideration," *see Emmert v. No Problem Harry, Inc.*, 222 Or App 151, 155, 192 P3d 844 (2008) ("Consideration is defined as some right, interest, profit, or benefit to the promisor * * * or some forbearance, detriment, loss, or responsibility given, suffered, or undertaking by the promissee[.]"), the department contends that the ALJ correctly ruled that the disputed agreements are not leases for purposes of ORS 657.047, because they lack consideration necessary to establish a lease under Oregon law.

The department further contends that the types of payments described in the agreements suggest employment rather than a lease. The department's rationale is that "the lease of the truck does not start and stop with Market Transport's actual use of the truck but the payments to the driver do." In the department's view, payments based on

---

[12] ORS 657.683(4) provides, in part:

"At any hearing [relating to unemployment insurance tax], the determination or assessment of the director or authorized representative shall be prima facie correct and the burden shall be upon the protesting employing unit to prove that it is incorrect."

mileage, driver experience, and activities when the truck is moving, but that provide no separate compensation for time when the truck is not moving, must be for the driver's services, rather than for use of the truck.

We have reviewed the legislative history cited by Market Transport and it bears out Market Transport's contention (with which the department agrees) that the legislature's intention in enacting ORS 657.047 was to exempt from "employment" the services of drivers who own their equipment which they "lease" to a common carrier in compliance with federal law. We also find considerable evidence in the legislative history for the contention that, in using the word "lease," the legislature was aware of the industry-specific meaning of that term in the federal regulatory context. But we conclude that it is unnecessary here to definitively resolve whether "lease" under ORS 657.047 has a specialized meaning rather than its ordinary meaning. That is because we conclude that, although the agreement does not state separate consideration for the use of the vehicle, read in its entirety, the agreement provides consideration for the lease of the vehicle within Oregon's ordinary meaning of "consideration."

No particular words are necessary to create a lease. *Port of Coos Bay v. Dept. of Rev.*, 298 Or 229, 233, 691 P2d 100 (1984). We note, again, that the agreement itself recites that the described payments are "for the use of Contractor's Motor Vehicle, and for services to be performed by Contractor[.]" Although, as the department contends, it is necessary to look to the substance of an agreement to determine its legal effect, *see Byrne Trucking, Inc. v. Emp. Div.*, 284 Or 443, 446, 587 P2d 473 (1978) (applying rule), we reject the department's contentions that the law requires that consideration for a lease be stated separately within a more comprehensive agreement or that payments based on mileage necessarily are not remuneration for use of the vehicle when it is not moving. A contract is to be interpreted as a whole to determine its legal effect. *Yogman v. Parrot*, 325 Or 358, 361-64, 937 P2d 1019 (1997). It is undisputed that mileage is a common method of compensation for the lease of a vehicle in interstate transportation, *see, e.g., Gilstrap v. Mitchell Bros. Truck Lines*, 270 Or 599, 602-03, 529 P2d

370 (1974), *cert den*, 421 US 1011 (1975) (owner-operator's action for amounts due under truck lease based on mileage), *Asbury Trans. v. Cons. Freightways*, 263 Or 53, 55, 501 P2d 321 (1972) (dispute concerning payment of fuel and highway taxes). And, although the department asserts that all of the agreement's payments are really to compensate for the driver's services, it has not offered any reason why the agreement's express recitation that it compensates both for use of the vehicle and the driver's services should be disregarded.

Furthermore, although many of the payments described in the agreement are based on the driver's services while en route, the agreement places other obligations on Market Transport that constitute "consideration." The agreement requires Market Transport to maintain and pay for interstate motor carrier licenses, use taxes, and liability insurance, and those payments continue through the duration of the agreement, even when the vehicle is idle. Market Transport also provides communication equipment and administrative support to contract drivers to assure that their services are in compliance with the law. Those obligations constitute consideration for Market Transport's use of the vehicle.

For those reasons, we conclude that the ALJ erred in determining that the agreements between Market Transport and contractors were categorically ineligible for the exemption under ORS 657.047 on the ground that the agreements did not specifically provide consideration for the period of time when a vehicle is not in use.

We next address the second issue presented by Market Transport's request for judicial review. The department imposed assessments on Market Transport based on remuneration paid to lessee-drivers, *i.e.*, drivers who lease vehicles from a third party and, together with the vehicle's owner, sign an agreement with Market Transport. As previously noted, when a driver is leasing the vehicle, the agreement with Market Transport designates both the lessee-driver and the vehicle's owner as the "contractor," and both the lessee-driver and the vehicle's owner must sign the agreement. The agreement imposes on the "contractor" the obligation to operate and maintain the leased vehicle. But,

as the ALJ noted, the record does not include an exemplar of the third-party lease of the vehicle to the lessee driver.

In upholding the assessments with respect to the lessee-drivers, the ALJ reasoned that, because the third-party lease was not in the record, it was not possible to determine that the lessee-drivers "furnished" their leased vehicles to Market Transport, as required by ORS 657.047(1)(b). *See 3P Delivery*, 254 Or App at 189 (in order to "furnish" a vehicle under ORS 657.047, the driver must possess an interest that can be transferred). The ALJ further concluded that, "absent evidence that the third-party lease explicitly placed the burden of maintenance on the third-party lessee driver, or some other evidence that the third-party lessee driver actually maintains the vehicle," the record did not support a finding that the third-party lessee drivers "maintained" the vehicles, as required by ORS 657.047. The ALJ concluded that, in the absence of such evidence, Market Transport had not established the exemption with respect to the lessee-drivers.

On judicial review, Market Transport contends that, contrary to the ALJ's statement that there was an "absence of evidence," there is in fact evidence as to both the "furnish" and the "maintain" requirements. Market Transport points to the agreement itself, signed by the lessee-driver, as *some* evidence that the lessee-driver had a "transferrable interest," because the agreement in fact transferred an interest in the vehicle to Market Transport. For the same reason, Market Transport contends, the ALJ erred in concluding that there was an absence of evidence that the lessee-drivers were required to maintain the vehicles: the agreement itself required the "contractor" to maintain the vehicle. Additionally, Market Transport notes that the record includes testimony of a former lessee-driver that he provided routine maintenance for the leased vehicle.

We agree with Market Transport that, even without the third-party leases, the record includes some evidence that the lessee-drivers both "furnished" and "maintained" the vehicles. The ALJ erred in concluding that there was no evidence to support those requirements and in upholding the assessments as to the lessee-drivers for that reason. We

therefore vacate the assessment as to the lessee-drivers and remand for reconsideration. If, on remand, the ALJ determines that the lessee-drivers both furnished and maintained their vehicles, then the services provided by the lessee-drivers are exempt from employment under ORS 657.047. If the ALJ determines on remand that the lessee-drivers did not furnish or maintain their vehicles, and that the services of those drivers were not otherwise exempt,[13] then the assessments as to the lessee-drivers may be reinstated.

Assessments as to owner-drivers reversed and remanded; assessments as to lessee-drivers vacated and remanded.

---

[13] *But see Delta Logistics, Inc. v. Employment Dept. Tax Section*, 279 Or App 498, 379 P3d 783 (2016) (wages paid to drivers hired by an owner of a vehicle leased to a for-hire carrier are exempt from employment under ORS 657.047).