No. 47 September 14, 2017 821

IN THE SUPREME COURT OF THE
STATE OF OREGON

DELTA LOGISTICS, INC.,
*Respondent on Review,*

*v.*

EMPLOYMENT DEPARTMENT TAX SECTION,
*Petitioner on Review.*

(ED 2014UIT00047; CA A158021; SC S064380)

On review from the Court of Appeals.*

Argued and submitted May 11, 2017.

Dustin Buehler, Assistant Attorney General, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Brad S. Daniels, Stoel Rives LLP, Portland, argued the cause and filed the brief for respondent on review.

Seann Colgan, Corr Cronin Michelson Baumgardner Fogg & Moore, LLP, Seattle, filed the brief for *amicus curiae* Oregon Trucking Association.

Lori Worthington Hurl, Betts, Patterson & Mines, Seattle, filed the brief for *amici curiae* American Trucking Associations, Inc., and Truck Renting and Leasing Association.

Before Balmer, Chief Justice, and Kistler, Walters, Landau, Nakamoto, and Duncan, Justices, and Linder, Senior Justice Pro Tempore.**

KISTLER, J.

The decision of the Court of Appeals is affirmed. The final order of the Administrative Law Judge is reversed.

_____

\* On appeal from the final order of the Administrative Law Judge. 279 Or App 498, 379 P3d 783 (2016)

\*\* Brewer, J., retired June 30, 2017, and did not participate in the decision of this case. Flynn, J., did not participate in the consideration or decision of this case.

**KISTLER, J.**

ORS 657.047(1)(b) creates an exemption from the unemployment benefit laws for truck owners that both lease their trucks to for-hire carriers and "personally operat[e], furnis[h] and maintai[n]" the leased trucks. On review, the Employment Department argues that, to come within that exemption, the owner must be the only person who operates the truck. In the department's view, if the owner hires another person to help him or her operate the truck, the owner does not "personally operat[e]" the truck, and the exemption does not apply. The Court of Appeals disagreed, reasoning that ORS 657.047(2) makes clear that the exemption includes owners who hire employees to help operate their trucks. *Delta Logistics, Inc. v. Employment Dept. Tax Section*, 279 Or App 498, 513-14, 379 P3d 783 (2016). Having allowed the department's petition for review, we affirm the Court of Appeals decision.

Delta Logistics, Inc., is a "for-hire carrier" that is licensed by the federal government to transport goods interstate. *Id*. at 500. Delta does not own any trucks. *Id*. at 502. Rather, it leases trucks from 40 owner-operators, who operate, furnish, and maintain the trucks.[1] *Id*. Some of those owner-operators are the only persons who operate the leased trucks. *Id*. Others hire employees to help them. *Id*. The department assessed Delta unemployment insurance taxes on the funds that Delta paid the owner-operators. The department contended that the owner-operators did not come within the exemption in ORS 657.047(1)(b) because the leases that the owner-operators entered into with Delta were not "leases" within the meaning of that subsection. An administrative law judge (ALJ) from the Office of Administrative Hearings agreed and issued a final order upholding the assessment.

---

[1] Lease agreements between owner-operators and federally licensed carriers originated as a result of federal requirements under the Interstate Commerce Act and continue today. *See* Douglas C. Grawe, *Have Truck, Will Drive: The Trucking Industry and the Use of Independent Owner-Operators over Time*, 35 Transp LJ 115, 122 (2008). Lease agreements allow carriers to reduce their overhead while allowing owner-operators to take advantage of the carriers' federal license to transport goods interstate. *Id*.

Delta petitioned the Court of Appeals for review of the ALJ's order. In the Court of Appeals, the department argued, as it had before the ALJ, that the exemption did not apply because the owner-operators' leases were not leases within the meaning of ORS 657.047(1)(b). The department argued alternatively that the phrase "personally operates" in ORS 657.047(1)(b) requires that the owner be the only person who operates the leased truck. In the department's view, if the owner hires another person to help operate the truck, the exemption does not apply.

The Court of Appeals was not persuaded by either of the department's arguments. It concluded that the leases between the owner-operators and Delta qualified as leases within the meaning of ORS 657.047(1)(b). *Delta Logistics*, 279 Or App at 511-12. It also rejected the department's alternative argument. Relying on ORS 657.047(2), the court explained that, contrary to the department's position, that subsection specifically recognizes that another person can assist the owner in operating the leased truck. *Id.* at 513-14. The department petitioned for review but only on the latter issue. It contended that the Court of Appeals had read the word "personally" out of the statute and that, properly interpreted, the exemption in ORS 657.047(1)(b) applies only to owner-operators who are the sole persons who operate their trucks. We allowed the department's petition to consider that issue.

ORS chapter 657 specifies the work for which employers must pay unemployment insurance taxes. Although the definitions in that chapter are somewhat circular, generally, an employer must pay unemployment insurance taxes on wages paid to employees who are engaged in employment. *See Broadway Cab LLC v. Employment Dept.*, 358 Or 431, 433, 364 P3d 338 (2015) (discussing statutorily defined terms). Often, litigation under ORS chapter 657 turns on whether a worker is an employee or an independent contractor, for whom no unemployment taxes are owed. *See id.* at 442-47 (analyzing that issue). ORS chapter 657 also provides, however, that unemployment insurance taxes are owed only on persons engaged in "employment," and ORS chapter 657 contains a series of exemptions that begin with

the phrase, "'employment' does not include." Those exemptions describe categories of exempt work, which range from being a caddy at a golf course in an authorized training program to working on a fishing boat in return for a share of the catch to officiating nonprofessional sporting events. *See* ORS 657.043 to ORS 657.094 (setting out various categories of work that do not constitute "employment" for which unemployment insurance taxes must be paid).

This case concerns one exemption from employment. ORS 657.047 provides, in part:

"(1)  As used in this chapter, 'employment' does not include:

"(a)  Transportation by motor vehicle of logs, poles and piling by any person who both furnishes and maintains the vehicle used in such transportation; or

"(b)  Transportation performed by motor vehicle for a for-hire carrier by any person that leases their equipment to a for-hire carrier and that personally operates, furnishes and maintains the equipment and provides service thereto.

"(2)  For the purposes of this chapter, services performed in the operation of a motor vehicle specified in subsection (1) of this section shall be deemed to be performed for the person furnishing and maintaining the motor vehicle."

Subsection (1) identifies two types of transportation services that are exempt from the unemployment benefit laws. One involves transportation by motor vehicle of certain types of goods (logs, poles, and piling) by certain persons (those who "furnish and maintain" the vehicle). ORS 657.047(1)(a). The other involves transportation by motor vehicle for for-hire carriers by a certain class of persons (persons who lease their equipment to a for-hire carrier and "personally operat[e], furnis[h], and maintai[n] the equipment"). ORS 657.047(1)(b).

The department does not dispute that a person who "furnishes and maintains" motor vehicles to carry logs, poles, and piling will come within the exemption in subsection (1)(a) even though that person owns more than one vehicle and hires other persons to help operate them. That

much follows from subsection (2), which recognizes that, in providing the transportation services described in subsection (1), one person may operate a motor vehicle that another person furnishes and maintains. The department argues, however, that the exemption for transportation services in subsection (1)(b) applies only when the person that owns the leased motor vehicle is also the sole person that operates it. That follows, the department argues, from the legislature's use of the word "personally." Delta responds that, when "personally" is viewed in light of the other terms used in ORS 657.047 and the legislative history of ORS 657.047(1)(b), it becomes clear that the legislature did not intend "personally" to require that the person that leases a motor vehicle to a for-hire carrier be the only person that operates, furnishes, and maintains it.

The issue, as the parties frame it on review, turns on what the word "personally" means in ORS 657.047(1)(b). In analyzing that issue, we begin with the terms that the legislature used and, when the legislature has not defined those terms, their ordinary meaning as found in the dictionary. *See State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (explaining that we look to the text, context, and legislative history of a statute to determine its meaning). We recognize, however, that dictionaries "do not tell us what words mean, only what words *can* mean, depending on their context and the particular manner in which they are used." *State v. Cloutier*, 351 Or 68, 96, 261 P3d 1234 (2011) (emphasis in original).

For the most part, the parties agree on the appropriate definition of "personally." "Personally" is an adverb that means "in a personal manner," *Webster's Third New Int'l Dictionary* 1687 (unabridged ed 2002), and the most applicable sense of "personal" means:

> "**2 a :** done in person without the intervention of another **:** direct from one person to another <a ~ inquiry>; *also* **:** originating in or proceeding from a single person <a ~ ultimatum> <~ government>."

*Id.* at 1686. The department reasons that, because "personal" means "done in person without the intervention of another," "personally operates," as used in subsection (1)(b),

requires that an owner that leases a vehicle to a for-hire carrier be the only person that operates it.

At first blush, that is a plausible interpretation of those two words. However, as Delta points out, "operates" is not the only verb that "personally" modifies. Rather, ORS 657.047(1)(b) refers to the person "that personally operates, furnishes and maintains the [leased] equipment." Ordinarily, when an adverb precedes a series of verbs, it modifies each verb in the series; that is, ordinarily, "personally" modifies "operates," "furnishes," and "maintains." *See Wyers v. American Medical Response Northwest, Inc.*, 360 Or 211, 221, 377 P3d 570 (2016) (illustrating that principle); *State v. Simonov*, 358 Or 531, 547, 368 P3d 11 (2016) (same); Quirk *et al.*, *A Comprehensive Grammar of the English Language* § 13.79 (1985) (ordinarily, "the premodifier applies to the whole sequence").

Read in the context of the entire verb phrase, the department's interpretation of "personally" becomes problematic. If the department's interpretation of that word were correct, an owner-operator could come within ORS 657.047(1)(b) only if the owner-operator were the sole person who operated, furnished, and maintained the leased motor vehicle. Put differently, under the department's interpretation of "personally," if someone other than the owner-operator maintained a leased truck by welding a cracked cylinder head, patching a tire, or even changing the oil, then the exemption would be inapplicable. Under the department's interpretation of "personally," the exemption would become so vanishingly narrow that it would lack any appreciable content.[2] Conversely, under Delta's view of the statute, the second part of the dictionary definition of "personally" would give greater effect to all the terms used in ORS 657.047. That is, in Delta's view, personally should be understood in this context as meaning "originating in or proceeding from

---

[2] Similarly, under the department's interpretation of "personally," ORS 657.047(1)(b) would not apply to a vehicle owned and operated by a corporation and leased to a for-hire carrier. That is so even if the corporation consisted of a single shareholder who performed all the tasks associated with operating, furnishing, and maintaining the vehicle. Put differently, the presence of the corporate form would exclude an owner-operator who otherwise would qualify for the exemption (even under the department's view) from taking advantage of it. Perhaps that is what the legislature intended, but it seems doubtful.

a single person." *See Webster's* at 1686. As long as the operation and maintenance of the leased vehicle originates in or proceeds from the owner, that fact is sufficient to say that the owner personally operated, furnished, and maintained the leased equipment. That definition of personally would not be defeated if the owner hired others to help in carrying out those tasks.[3]

Delta notes, and we agree, that the department's interpretation of "personally" leads to another textual problem. It is difficult to reconcile the department's interpretation of that term with ORS 657.047(2). As noted, subsection (2) provides:

> "For the purposes of this chapter, services performed in the operation of a motor vehicle specified in subsection (1) of this section shall be deemed to be performed for the person furnishing and maintaining the motor vehicle."

As also noted above, subsection (2) recognizes that one person may operate a motor vehicle that another person furnishes and maintains. And, by its terms, subsection (2) applies to "the operation of a motor vehicle specified in subsection (1) of this section"; that is, subsection (2) applies to the operation of a motor vehicle specified in subsections (1)(a) and (1)(b). Subsection (2) thus explicitly recognizes that one person may assist the owner in operating the vehicle under subsection (1)(b), contrary to the department's interpretation of that subsection.

The department responds that, if its interpretation of subsection (1)(b) is correct, there is no textual problem. Specifically, the department argues that, if subsection (1)(b) applies only when the same person both owns and is the sole driver of the leased vehicle, then the reference in subsection (2) to "services performed in the operation of a motor vehicle specified in subsection (1) of this section" really means

---

[3] We use "personally" that way in other contexts. To take a familiar example, if a lawyer says that she will personally handle a client's case, the word "personally" could mean that no one else will do any work on the case. However, the phrase "personally handle," as it is used in a legal context, ordinarily means that the lawyer will oversee or be primarily responsible for the case but that associates within the firm may assist her in doing the work, as may legal assistants. In that context, "personally" does not mean that no other person will assist the lawyer in handling the client's case.

services performed in the operation of a motor vehicle speci-
fied in subsection (1)(a) of this section.

   It is possible to read subsections (1)(b) and (2) as
the department does. However, its reading is problematic.
The department's proposed reconciliation of subsections
(1)(b) and (2) rests on the assumption that its reading of
subsection (1)(b) is the only possible one—a matter that
is open to question. Beyond that, if we look to the text of
ORS 657.047 as a whole and give meaning to all its parts,
as ORS 174.010 directs us to do, then Delta's interpreta-
tion is consistent with that statutory directive while the
department's interpretation requires us to read the refer-
ence to "subsection (1)" as if it really said "subsection (1)(a)."
*Cf. Vsetecka v. Safeway Stores, Inc.*, 337 Or 502, 510, 98 P3d
1116 (2004) (following directive to give effect to all the parts
of a statute).

   If we looked solely to the text of ORS 657.047 to
determine the meaning of subsection (1)(b), we would con-
clude that, while both parties' interpretations are plausi-
ble, Delta's interpretation is preferable. Its interpretation
gives greater effect to all the terms of the statute while the
department's interpretation focuses on only two words in
that statute to the exclusion of the remainder of its terms.

   We also consider the context and legislative history
of ORS 657.047(1)(b) in determining what that subsection
means. In this instance, the context consists of the prior ver-
sion of ORS 657.047, which serves primarily as a backdrop for
the 1987 amendment that is codified as ORS 657.047(1)(b).
*See Stevens v. Czerniak*, 336 Or 392, 401, 84 P3d 140 (2004)
(explaining that prior versions of a statute constitute con-
text). We first set out that context. We then describe the
events that gave rise to the 1987 amendment. Finally, we
set out the discussion of the bill in the committee hearings.
As we explain below, there are statements in the first hear-
ing that provide some support for the department's position.
However, the operative text of the bill changed after that
hearing, and the discussions of the bill in the later commit-
tee hearings make clear that the department's interpreta-
tion of ORS 657.047(1)(b) is not correct.

As initially enacted in 1963, ORS 657.047 applied only to the transportation of one category of goods: logs, poles, and piling. Or Laws 1963, ch 469, § 2. ORS 657.047 (1963) provided:

"(1)  As used in this chapter, 'employment' does not include transportation by motor vehicle of logs, poles and piling by any person who both furnishes and maintains the vehicle used in such transportation."

"(2)  For the purposes of this chapter, services performed in the operation of a motor vehicle specified in subsection (1) of this section shall be deemed to be performed for the person furnishing and maintaining the motor vehicle."

The department acknowledges that, as initially enacted, ORS 657.047 (1963) applied to persons using motor vehicles to transport logs, poles, and piling, even though the person furnishing and maintaining the motor vehicles had more than one vehicle and hired others to operate them.

By its terms, ORS 657.047 (1963) did not apply if an owner-operator carried goods other than logs, poles, and piling. However, before 1986, owner-operators who leased their trucks to for-hire carriers were generally not regarded as the carrier's employees no matter what cargo they carried. Tape Recording, Joint Conference Committee, House Bill (HB) 3283, June 26, 1987, Tape 3, Side A (testimony of Etchison and Hunter) (describing practice before 1986). As a result, the department initially did not assess unemployment taxes on carriers for the money they paid owner-operators for their services.

In 1986, however, the department began assessing carriers unemployment insurance taxes on "owner-operators and drivers hired by equipment owners with trucks on lease to the motor carrier." Exhibit A, Joint Conference Committee, HB 3283, June 23, 1987 (June 22, 1987, Etchison letter) (emphasis omitted). Beginning in 1986, the department took the position that both the owner-operators and the owner-operators' employees were the carrier's employees because the owner-operators transported goods under the carriers' permits and, in the department's view, acted under the carriers' direction and control. *Id.*; Tape Recording,

Joint Conference Committee, HB 3283, June 26, 1987, Tape 3, Side A (testimony of Lent and Hunter).

In 1987, Senator Hannon introduced Senate Bill (SB) 357 on behalf of Lyle Stanley, an owner-operator. Tape Recording, Senate Labor Committee, SB 357, Mar 3, 1987, Tape 46, Side A.[4] Senator Hannon explained that the bill was intended to address "an issue of an owner-operator who provides the trucking operation with a piece of equipment and serves as the driver of that piece of equipment." *Id.* As initially proposed, the bill accomplished that goal by deleting the phrase "logs, poles and piling" in ORS 657.047(1) (1963) and replacing it with the phrase "any commodity." *See* Bill File, SB 357, June 12, 1986 (initial draft). The bill, as initially drafted, would have provided that employment does not include "the transportation by motor vehicle of any commodity by any person who both furnishes and maintains the vehicle used in such transportation." *Id.*

Stanley was the primary person who testified at the initial hearing on the bill. *See* Tape Recording, Senate Labor Committee, SB 357, Mar 3, 1987, Tape 46, Side A. He explained that, because owner-operators were rarely, if ever, eligible to claim unemployment benefits, they should not have to bear the cost of unemployment taxes.[5] *Id.* As he explained, the proposed means for accomplishing that goal were "pretty simple." *Id.* By replacing the phrase "logs, poles and piling" in ORS 657.047(1) (1963) with "any commodity," the resulting exemption included owner-operators. One potential difficulty, however, with Stanley's proposal was that the resulting exemption also included employees hired by the owner-operators. Not only would no one be responsible for paying unemployment taxes on those employees, but the owner-operators' employees would not be eligible for unemployment insurance if they lost their jobs.

Two senators asked Stanley about that issue. When Senator Otto asked whether owner-operators hired drivers,

---

[4] The legislative history of ORS 657.047(1)(b) derives from two bills. SB 357, which passed the Senate but died in the House, was later inserted in HB 3283, which passed both houses.

[5] Although the carriers were responsible for paying the unemployment taxes, the carriers passed those costs on to the owner-operators.

Stanley replied, "I don't really know on that. I don't think that—I have tried it before years ago but it doesn't come out too well to hire a driver on a one-truck operation. So, if I was going to get off my truck, I would just stop [driving rather than hire someone to drive]." *Id.* Senator Otto tried again from a different perspective. After noting that the bill would apply to owner-operators other than Stanley, he asked, "Are any of these owner-operators owning more than one truck?" *Id.* Stanley replied:

> "Some of them do, yes. But any other—I can explain that. Any owner-operator who owns more than one truck, then he does not fall into this category if he hires drivers on the trucks. Then he must, the owner of these—say he owns three trucks and hires a driver, then he falls under the category where he has to furnish the unemployment and everything because he then becomes an employer. They're just working. The drivers do not own the truck so they would come out of this then. Actually, what this bill is is a one truck operator who owns, operates and maintains his own equipment."

*Id.*

Stanley's response to Senator Otto's question is not a model of clarity. On the one hand, as the department notes, Stanley described SB 357 as providing an exemption for "a one truck operator who owns, operates and maintains his own equipment." On the other hand, his discussion of drivers hired by owner-operators is directed more to the status of those drivers (they would be employees of the owner-operators) than the status of the owner-operators who hired them. Nothing in Stanley's prior testimony suggested that owner-operators who hired drivers or who had multiple trucks should be viewed as employees of the carrier; indeed, his earlier testimony cut against that notion. For the most part, Stanley's concern was ensuring, one way or another, that owner-operators were exempt from the unemployment benefits laws.

Senator Hill, the committee chair, focused on the last point that Senator Otto had noted. Senator Hill observed that the bill, as initially proposed, would apply to a "two, three-truck operator." *Id.* He also noted that ORS 657.047(2) (1963) contemplated that, if another person performed

services in the operation of a motor vehicle specified in subsection (1), then that person would be deemed to be performing those services for the person who furnished and maintained the vehicle. *Id.* Put differently, he suggested that, under subsection (2), drivers hired by owner-operators to help operate the leased trucks would be deemed the owner-operators' employees. That would result in unemployment taxes being assessed on the wages that the owner-operators paid their drivers, as Stanley had testified was the practice. Senator Hill did not pursue the point but observed that perhaps further drafting could sharpen the bill's focus. *Id.*

After the first hearing, Legislative Counsel redrafted the bill. It proposed that the text of ORS 657.047(1) (1963), which exempted transportation by motor vehicle of logs, poles, and piling, should be left unchanged and become subsection (1)(a). Legislative Counsel also proposed the addition of subsection (1)(b), which would provide that employment does not include:

> "Transportation performed by a sole proprietorship, partnership or corporation that leases their equipment to a certified common carrier, and that furnishes and maintains the equipment and provides service thereto."

Exhibit L, Senate Labor Committee, SB 357, Apr 9, 1987. Legislative Counsel's draft is telling because it assumes, contrary to Stanley's testimony in the Senate hearing (and the department's position here), that the exemption applies to owner-operators, such as corporations and partnerships, that by definition hire employees to operate and maintain the leased equipment.

Lynn-Marie Crider, the committee administrator, agreed with the assumption implicit in Legislative Counsel's draft—that the exemption would apply to owner-operators that hired employees to help operate the leased equipment. She was concerned, however, that the exemption drafted by Legislative Counsel would also exempt the owner-operators' employees from coverage. She explained that, under Legislative Counsel's draft:

> "Even employe[e]s of a sole proprietorship, partnership or corporation that leases equipment to a common carrier would be exempt employment. That is, even though they

[the employees] do not own the equipment and thus are not owner operators, they would not be entitled to unemployment insurance coverage. I do not believe this situation is uncommon."

Exhibit M, Senate Labor Committee, SB 357, Apr 9, 1987 (Crider Memo); *see also* Tape Recording, Senate Labor Committee, SB 357, Apr 9, 1987, Tape 101, Side B (remarks of Lynn-Marie Crider). To avoid exempting the owner-operators' employees along with the owner-operators, she proposed redrafting subsection (1)(b) to provide that employment does not include:

"Transportation performed by motor vehicle for a certified common carrier by any person that leases his equipment to a certified common carrier and that furnishes and maintains the equipment and provides service thereto."

Exhibit M, Senate Labor Committee, SB 357, Apr 9, 1987 (Crider Memo).

At a work session on the bill, Crider explained her reasons for rewriting subsection (1)(b). She told the committee:

"The potential difficulty with that language [which Legislative Counsel had proposed] is that some outfits, if you will, that own trucks and lease them to a common carrier also have employees; that those employees are obviously not owner-operators, and I didn't think that it was the intent of the bill to prevent them from drawing unemployment insurance."

Tape Recording, Senate Labor Committee, SB 357, Apr 9, 1987, Tape 101, Side B. Her draft accordingly sought to exempt owner-operators from unemployment insurance coverage but not the owner-operators' employees.

Crider's rewrite met with general approval, with one exception. At the end of the work session on April 9, Senator Kerans asked about her use of the pronoun "his." *Id*. The committee, however, did not discuss that issue until it convened another work session on the bill on April 14. During that work session, Crider initially recommended omitting any pronoun. Tape Recording, Senate Labor Committee, SB 357, Apr 14, 1987, Tape 104, Side B. One senator observed,

however, that they had to replace "his" with a word that would show that the person leasing the motor vehicle to the carrier owned it. *Id.* (unidentified senator). As the speaker explained, they didn't want to "get loopholed by having an employee" of the owner-operator be included within the exemption. *Id.* Various senators attempted to wordsmith the problem. One person suggested "his or hers." *Id.* Another suggested inserting "owns and leases" in the text of the exemption. *Id.* (remarks of Senator Hill).

No suggestion proved satisfactory, and the committee decided to approve Crider's draft and ask legislative counsel for help in refining it. *Id.* To convey the committee's thinking, the chair noted that the exemption would apply to "any person that owns and leases his or her equipment." *Id.* (remarks of Senator Hill). He then added, "We're talking about owns and leases and operates, those are the parameters, and we'll let counsel fix it." *Id.* A committee member observed, "I wonder whether you shouldn't get more personal with the owner who owns and operates and maintains because you can do that from a third party position." Tape Recording, Senate Labor Committee, SB 357, Apr 14, 1987, Tape 105, Side A (remarks of Senator Houck).

The committee voted to approve SB 357 but to wait to submit its report to the Senate until legislative counsel clarified the point that they had just discussed. *Id.* After legislative counsel redrafted the bill, subsection (1)(b) provided that employment does not include:

> "Transportation performed by motor vehicle for a certified common carrier by any person that leases their equipment to a certified common carrier and that personally operates, furnishes, and maintains the equipment and provides service thereto."

Bill File, SB 357, Apr 20, 1987 (A-Engrossed version). The bill went to the full Senate, which approved it.

The Senate Labor Committee's discussions on April 9 and 14 reflect the committee's understanding that the exemption would apply to owner-operators who hired employees to help them operate the leased equipment but would not apply to the owner-operators' employees. As the

discussions made clear, the owner-operators would continue to owe unemployment taxes on their employees' wages. That is how the staff measure analysis described the A-Engrossed version of the bill:

> "SB 357 as amended exempts persons who own and personally operate trucks under lease to a common carrier from unemployment insurance coverage. However, an individual who is hired by a truck owner to operate a truck under lease to a common carrier remains covered."

Bill File, SB 357 (Staff Measure Analysis of SB 357 A-Engrossed). The analysis added that "[t]he amendments rewrote the language of the original bill to specifically state that employe[e]s of owner-operators leasing equipment to carriers retain coverage." *Id.*

The Senate approved SB 357 and sent it to the House, where it did not get a hearing. Later, after SB 357 had died in the House, the Senate "gutted and stuffed" HB 3283 with the A-Engrossed version of SB 357. *See State v. Medina*, 357 Or 254, 261 and n 6, 355 P3d 108 (2015) (discussing legislative practice of gutting and stuffing bills). The House did not concur in the Senate's changes to HB 3283, and a Conference Committee was convened to resolve the dispute. Senate and House Journal, Regular Session, HB 3283, H-220 (1987).

The Conference Committee met twice, once on June 23 and again on June 26. *Id.* During the first meeting, the House conferees expressed concern about the fiscal effect on the unemployment benefits fund of exempting owner-operators. Tape Recording, Joint Conference Committee, HB 3283, June 23, 1987, Tape 1, Sides A and B. The Senate conferees explained that the effect was limited; owner-operators were not currently paying into the fund and rarely, if ever, filed claims for unemployment benefits. *Id.*

In attempting to quantify the effect of the exemption, a representative from the Employment Department noted that, on average, 20 persons identified as owner-operators had drawn unemployment benefits each year. Tape Recording, Joint Conference Committee, HB 3283, June 23, 1987, Tape 1, Side A (testimony of Tom Lynch). Representative Shiprack clarified that, of those 20 persons,

12 "were owner-operators [and] eight were drivers for owner-operators, which [he] would consider as an employee." *Id.* He "wonder[ed] if the language in this bill would exempt them also from unemployment." *Id.* Senator Hannon responded:

> "They are an employee, and the owner-operator would have to pay unemployment tax on that employee. If I owned a truck, and I drove, I would not be covered under the provisions of the bill. But if I hired you to drive the truck for me and I decided to try and go into some other type of employment, you are then my employee that I am then held accountable for paying the unemployment taxes."

*Id.* Representative Shiprack's question is telling because it assumed that owner-operators who hired employees would be included in the exemption, and he asked if the owner-operators' employees "also" would be included in the exemption.

At the end of the first Conference Committee meeting, the conferees failed to agree. Senate and House Journal, Regular Session, HB 3283, H-220 (1987). A different group of conferees was appointed, and the reconstituted Conference Committee held a second hearing on June 26. *Id.* At that hearing, Greg Etchison, the president of a for-hire carrier, testified. Tape Recording, Joint Conference Committee, HB 3283, June 26, 1987, Tape 3, Side A. He explained that carriers find loads for owner-operators to haul and split the resulting fee. *Id.* In his view, owner-operators who lease their trucks to for-hire carriers were effectively independent contractors and should be exempt from the unemployment benefits laws, even though the Employment Department viewed owner-operators as employees of the carriers. *Id.* When asked how he would determine which owner-operators should come within the exemption, he explained that, "[i]f they supply and maintain their own equipment, which means, as far as I'm concerned, that they're in business for themselves—that they're not employees, in that sense of the word, for Employment Department purposes."[6] *Id.*

---

[6] In making those statements, Etchison did not distinguish between owner-operators who hired employees and those who did not. Rather, his point was that owner-operators should be exempt because of their relationship with the carrier, which did not vary depending on whether the owner-operators hired or did not hire employees to help them.

Etchison also identified one carve-out to his proposed rule. If an owner-operator hired an employee to help him or her, the owner-operator would be responsible for paying unemployment tax on that person's wages. *Id.* He noted, for example, an owner-operator (a husband and wife in Moser) who hired a person to drive a truck that they leased to Etchison. In that instance, the owner-operator employed the person hired to drive the truck. After hearing Etchison's testimony, Senator Hannon explained that the goal of the bill was to exempt the persons "that operate as an independent owner-operator but they lease their vehicles" to carriers. *Id.* (remarks of Senator Hannon). He reiterated that the bill was not intended to exempt the owner-operators' employees from coverage and that the reports that the Employment Department had compiled to determine the fiscal effect of the exemption had erroneously included the owner-operators' employees. *Id.*

Having heard that testimony, the House conferees concurred in the changes to HB 3283 made by the Senate. Senate and House Journal, Regular Session, HB 3283, H-220 (1987). Both houses adopted the Conference Committee Report and passed the bill, which the Governor signed. *Id.*

As we read the legislative history of SB 357 and HB 3283, the text of SB 357 shifted over the course of the Senate Labor Committee's hearings, as did the explanations of it. As the bill was initially proposed, Stanley's explanation of it did not match its terms. After Legislative Counsel and then Crider redrafted the bill, Crider explained (and the committee agreed) that the bill would exempt from the unemployment benefit laws owner-operators who hired workers to help them operate and maintain their leased trucks. However, owner-operators who hired employees would be responsible for paying unemployment benefit taxes on their employees' wages. That same understanding emerges from the Joint Conference Committee hearings on HB 3283, which resulted in the House concurring in the Senate amendment to that bill.

To be sure, as the department argues, Stanley's testimony in support of the bill, as it was initially drafted,

provides some support for the department's interpretation. However, the department's view of the legislative history is limited. It focuses on Stanley's testimony but fails to give effect to later changes in the text of the bill and the later discussions of those changes in both the Senate Labor Committee and the Joint Conference Committee. In our view, if we look at all of the legislative history, one answer emerges: The legislature did not intend to exclude owner-operators from the exemption set out in ORS 657.047(1)(b) because they employed other persons to help them operate trucks that they leased to for-hire carriers. Rather, owner-operators would come within the exemption even if they hired employees to help them. However, owner-operators' employees would be covered by the unemployment benefits laws, and the owner-operators would be responsible for paying unemployment compensation taxes on their employees.

Considering the text, context, and legislative history of ORS 657.047(1)(b), we do not agree with the department that Delta owes unemployment taxes on owner-operators who hired employees to help them operate the motor-vehicles they leased to Delta. The department has not identified any other basis for holding the exemption inapplicable to those owner-operators.[7] Accordingly, we affirm the Court of Appeals decision and reverse the ALJ's order.

The decision of the Court of Appeals is affirmed. The final order of the Administrative Law Judge is reversed.

---

[7] We express no opinion on whether, in another case, the exemption may be inapplicable for some other reason. For instance, Delta noted in oral argument that ORS 657.047(1)(b) would not apply if a carrier leased a motor vehicle to the owner-operator, which leased it back to the carrier. The department, however, does not argue that any owner-operator and Delta entered into such a lease-back.