Argued and submitted April 17, 2015, reversed and remanded
February 23, 2017

HOOTON, WOLD & OKRENT, LLP,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT,
*Respondent.*

Office of Administrative Hearings
A153773

391 P3d 858

Donald M. Hooton argued the cause and filed the briefs for petitioner.

Denise G. Fjordbeck, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Karla H. Ferrall, Assistant Attorney General.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

## ORTEGA, P. J.

Petitioner provided part-time employment to Hooten, a former employee of Kaiser Permanente who was receiving unemployment benefits. Petitioner requests judicial review of an order of an administrative law judge (ALJ) that affirmed the Oregon Employment Department's denial of petitioner's request for "relief of charges" to its unemployment insurance account under ORS 657.471(9).[1] Petitioner argues on review that it should have been relieved of charges related to a second year of unemployment benefits paid to Hooten, because, in accordance with that statute, (1) Hooten lost full-time employment with Kaiser during the "base year"; (2) petitioner employed Hooten part-time during the "base year" and at the time of the assessment of charges; and (3) Hooten's eligibility for benefits was factually related to her loss of employment with Kaiser. The ALJ concluded that petitioner was not entitled to relief of charges under ORS 657.471(9) because Hooten was not petitioner's part-time employee at the time she lost her employment with Kaiser, and Hooten's eligibility for a second year of unemployment benefits was not "because of [her] loss of employment" with Kaiser. On review, petitioner challenges the ALJ's decision, arguing that the statute does not require "simultaneous" employment by two or more employers, and asserting that Hooten's loss of employment with Kaiser was the reason

---

[1] ORS 657.471(9) provides:

"Benefits paid to an individual may not be charged to a base year employer if:

"(a) The employer furnished part-time work to the individual during the base year;

"(b) The individual has become eligible for benefits because of loss of employment with one or more other employers;

"(c) The employer has continued to furnish part-time work to the individual in substantially the same amount as during the individual's base year; and

"(d) The employer requests relief of charges within 30 days of the date the notice provided for in ORS 657.266 is mailed or delivered to the employer."

At the time of the events in this case, the "part-time relief" provision was located in ORS 657.471(10) (2011) *amended by* Or Laws 2013, ch 704, § 1. The legislature amended ORS 657.471 in 2013 which changed the internal numbering of the statute, but did not substantively change the "part-time relief" provision. Accordingly, we refer to the current version of the statute throughout this opinion.

that she was eligible for a second year of unemployment benefits. We conclude that the ALJ erred in her application of ORS 657.471(9) and that petitioner had indeed satisfied the requirements of that statute. Accordingly, we reverse and remand.

The following facts are undisputed. Hooten filed a claim for unemployment benefits in October 2011 after Kaiser Permanente terminated her employment that same month. The department approved her claim and awarded benefits. Hooten began working part time for petitioner six months later in April 2012, and she continued to collect unemployment benefits. When her initial "benefit year"[2] expired on October 20, 2012, the department denied her application for benefits for the week of October 21, 2012 through October 27, 2012. Accordingly, Hooten contacted the department and was told that she was eligible to file a new claim. She did so, and the department determined that she was eligible for unemployment benefits for a "second benefit year." It further determined that, because petitioner had paid Hooten wages during the relevant "base year"[3]—July 1, 2011 to June 30, 2012—petitioner was a "base year employer" and, under ORS 657.471(1),[4] was subject to potential "charges" to its account for benefits paid to Hooten. "Charges" are used in part to calculate an employer's unemployment insurance rate. *See* ORS 657.462 (establishing a method for calculating the "benefit ratio" and assigning the unemployment tax rate using "charges" to the employer's record). The department sent petitioner notice of the potential charges and petitioner requested relief from those charges under ORS 657.471. The

---

[2] ORS 657.010(3) defines "[b]enefit year" as

"a period of 52 consecutive weeks commencing with the first week with respect to which an individual files an initial valid claim for benefits, and thereafter the 52 consecutive weeks period beginning with the first week with respect to which the individual next files an initial valid claim after the termination of the individual's last preceding benefit year except that the benefit year shall be 53 weeks if the filing of an initial valid claim would result in overlapping any quarter of the base year of a previously filed initial valid claim."

[3] "'Base year' means the first four of the last five completed calendar quarters preceding the benefit year." ORS 657.010(1).

[4] ORS 657.471(1) provides that, except as otherwise provided, benefits paid to a claimant shall be charged to each of the employers who employed her during the base year proportionate to the wages paid by each employer to the claimant during that base year.

department denied relief, citing Hooten's continued employment with petitioner. Petitioner's appeal of that decision was referred to the Office of Administrative Hearings for a contested case hearing. At issue during the contested case hearing was the applicability of ORS 657.471(9). That statute provides:

"Benefits paid to an individual may not be charged to a base year employer if:

"(a) The employer furnished part-time work to the individual during the base year;

"(b) The individual has become eligible for benefits because of loss of employment with one or more other employers;

"(c) The employer has continued to furnish part-time work to the individual in substantially the same amount as during the individual's base year; and

"(d) The employer requests relief of charges within 30 days of the date the notice provided for in ORS 657.266 is mailed or delivered to the employer."

At the hearing, petitioner argued that it had satisfied all of the requirements of ORS 657.471(9). Petitioner asserted that, as to paragraph (a), it had furnished part-time work to Hooten during the base year. As to paragraph (b), petitioner claimed that Hooten had become eligible for benefits because she was terminated from employment during the relevant base year by Kaiser. As to paragraph (c), it was undisputed that petitioner continued to employ Hooten in a part-time capacity and, as to paragraph (d), it was similarly undisputed that petitioner had timely requested a relief of charges.

After the hearing, the ALJ issued a final order denying petitioner's request for relief from the charges, concluding that petitioner had failed to satisfy ORS 657.471(9)(a) and (b). The ALJ had reasoned at the hearing that paragraph (a) is satisfied only when a claimant is working simultaneously for two employers during the base year and the claimant continues to work for one of the employers after the claimant's employment with the other employer ends. That is, the ALJ concluded that the statute does not provide relief

from charges in a situation like the one presented here—where a claimant subsequently (not simultaneously) works part time in the base year for a second employer after losing other employment.

As for paragraph (b), the ALJ concluded that Hooten's second unemployment claim—filed on October 21, 2012—was not filed due to a "loss of employment with one or more other employers." The ALJ determined that ORS 657.471(9)(b)

"only applies when an individual regularly works part-time for a base year employer and files the new claim due to loss of the other employment. The employer was the claimant's last employer at the time she filed the claim and she had not worked elsewhere for at least one year. The claimant did not file her claim on October 21, 2012, due to a loss of other employment at that time. The claimant filed her claim on October 21, 2012, because she was no longer eligible for Emergency Unemployment Compensation (EUC) on her former claim."

Put another way, the ALJ concluded that, because Hooten was employed by petitioner at the time that she filed her second claim for benefits and had not worked for any other employer for over a year, she did not file her second claim because of a loss of "other employment."

On judicial review, petitioner challenges the ALJ's decision, asserting that petitioner satisfied all of the requirements for obtaining relief from charges under ORS 657.471(9). We agree.

We begin with ORS 657.471(9)(a). Again, paragraph (a) requires the employer to have "furnished part-time work to the individual during the base year." To resolve whether the legislature intended to require "simultaneous" employment under the text of ORS 657.471(9)(a), we analyze the text of the statute in context, considering any relevant legislative history, and, if necessary, applying maxims of statutory construction. *See Delta Logistics, Inc. v. Employment Dept. Tax Section,* 279 Or App 498, 506, 379 P3d 783, *rev allowed,* 360 Or 697 (2016) (using the interpretative methodology of *State v. Gaines,* 346 Or 160, 171-72, 206 P3d 1042 (2009), to construe ORS 657.047).

Petitioner argues that the plain text of ORS 657.471(9)(a) simply requires the employer who is seeking relief from charges to have provided part-time employment to the claimant *during the base year*; nothing in the statute requires the claimant to have been *simultaneously* employed during the base year by another employer. The department acknowledges that the statutory text does not explicitly require simultaneous employment. However, the department asserts that, if subsection (9) is read as a whole, the ALJ's interpretation of paragraph (a) is correct. The department claims that the legislature's use of "one or more other employers" in paragraph (b) and the use of "the employer" in paragraph (c) shows that the legislature intended to "describe a scenario in which a claimant was employed by more than one employer during the base year, one of those employers had provided part-time work and continued to do so into the benefit year, and the claimant suffered a 'loss of employment' with one of the other employers."

We agree with petitioner that the ALJ's interpretation of ORS 657.471(9)(a) adds a requirement to the statute that is not in the text and was not intended by the legislature. The text of paragraph (a) requires that the employer "furnished part-time work to the individual during the base year[.]" Nothing in that text indicates that simultaneous employment by two or more employers is required during the base year. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993) (holding that the text of the statutory provision "is the best evidence of the legislature's intent"). The only explicit requirement in the statute is that the employer furnished part-time employment *"during the base year."* Although the department may be correct that, as a whole, ORS 657.471(9) contemplates a scenario in which the claimant was employed by more than one employer during the base year, that scenario does not preclude subsequent (rather than simultaneous) employment by different employers during that base year.

Further, nothing in ORS 657.471(9) as a whole, or anything else considered context for the statute, demonstrates that the legislature intended paragraph (a) to require simultaneous employment by different employers during the base year. In fact, inserting that requirement into ORS

657.471(9)(a) would violate the rule of statutory construction that prohibits us from adding to a statute words that the legislature has omitted. *See* ORS 174.010 ("In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted[.]"). Accordingly, because it is undisputed that petitioner "furnished part-time employment" to Hooten during the relevant base year, the ALJ erred by concluding that petitioner failed to satisfy ORS 657.471(9)(a).

As for the ALJ's conclusion that petitioner failed to satisfy ORS 657.471(9)(b), petitioner argues that the ALJ erred because Hooten's *eligibility* for benefits in the second benefit year *was due* to her loss of employment with Kaiser. Again, the statutory provision is satisfied if the claimant "has become eligible for benefits because of loss of employment with one or more other employers." Petitioner argues that it is undisputed that Hooten would not have been eligible for benefits in a second benefit year if she had not lost her employment with Kaiser during the base year for her second claim. Thus, petitioner claims that, under the statute, even though Hooten's loss of employment happened in October 2011, she "has become eligible for benefits because of loss of employment with one or more other employers." Petitioner asserts that the ALJ wrongly focused on Hooten's *motive* for filing her second claim in October 2012—*i.e.*, because she was no longer eligible for benefits on her former claim—and ignored the reason that she was eligible for benefits—*i.e.*, because she had lost employment with Kaiser during the relevant base year.

The department acknowledged at oral argument that Hooten's eligibility for benefits in the second benefit year is "not unconnected" to her loss of employment with Kaiser in October 2011. However, the department argues that Hooten became eligible for a second year of benefits, not because of loss of employment, but because she was "underemployed." That is, although she was eligible for benefits during her first benefit year because of her loss of employment with Kaiser in October 2011, her eligibility for a second benefit year was because her part-time wages during

the second base year—July 1, 2011 to June 30, 2012—met the "earnings qualification" in ORS 657.150(2)(a), yet were low enough that she still met the definition of "unemployed" in ORS 657.100(1).

The department explains that that is so because the unemployment statutes include "earnings qualifications" that must be satisfied for a claimant to qualify for a second year of benefits. The earning qualification that is relevant to this case is ORS 657.150(2)(a)(B), which provides that, if an individual was paid benefits during a "preceding benefit year," that individual must "[h]ave earned wages" of at least "six times the individual's weekly benefit amount" during the "preceding benefit year" to qualify for benefits in a subsequent benefit year. In other words, unless a claimant earns six times her weekly benefit amount while performing work *during* the initial benefit year, she does not qualify for a second year of benefits. However, to receive benefits the claimant must still qualify as "unemployed" under the definition in ORS 657.100(1), which, in relevant part, means that the claimant worked "less than full-time" and the "remuneration paid or payable * * * for services performed during the week is less than the individual's weekly benefit amount."

Applying that framework to the facts of this case, the department explains that Hooten's initial benefit year spanned October 2011 to October 2012. Her weekly benefit amount during that year was based on her employment with Kaiser. However, to qualify for benefits for a second benefit year, under ORS 657.150(2)(a)(B), she had to have earned six times her weekly benefit amount in part-time wages *with petitioner* during her initial benefit year. Therefore, according to the department, had Hooten not worked part-time for petitioner during the initial benefit year, she would not have been eligible for a second year of benefits. In the department's view, because Hooten would not have been eligible for a second year of benefits *but for* her part-time work with petitioner, Hooten's eligibility for a second year of benefits was not because of her loss of employment with Kaiser.

Petitioner does not dispute that Hooten's part-time employment had some role in her eligibility for a second year of benefits, but argues that, regardless, her loss

of employment with Kaiser is still the reason that Hooten became eligible for benefits in both benefit years. Petitioner explains that, under ORS 657.100(1), a claimant is "unemployed" if wages from part-time employment are less than the claimant's weekly benefit amount, which is calculated based on wages earned *during the base year.* Here, Hooten's weekly benefit amount was calculated based on *all* wages earned by Hooten during the base year—including wages earned from Kaiser during the base year. Petitioner concludes that, "[c]onsquently, [Hooten] established eligibility for a second year of benefits because the income earned with Kaiser was sufficiently substantial to set her benefit amount high enough that her part-time employment with petitioner still left her in the category of the unemployed."

Petitioner also argues that the legislature could not have intended to preclude a relief of charges to a part-time employer in the circumstances presented by this case. Petitioner maintains that ORS 657.471(9) was enacted to "remove any perceived barrier" to hiring a worker on a part-time basis after the worker has lost full-time employment elsewhere. It claims that the ALJ's ruling in this case discourages employers from providing extended part-time work to individuals who have lost employment with another employer. According to petitioner, that is so because the part-time employer will suffer an increase in unemployment tax rates even though the individual's need for unemployment benefits is attributable to a loss of employment with another employer.

With that background in mind, it is clear that Hooten's eligibility for benefits for a second benefit year is connected in some way to both her loss of employment with Kaiser in October 2011 and her part-time work with petitioner in 2012. That is, it is apparent that, if not for her loss of employment with Kaiser, she would not have been eligible for a second benefit year. Similarly, if she had not earned enough wages working part-time for petitioner during the initial benefit year, she would not have qualified under ORS 657.150(2)(a)(B) for a second year of benefits.

We conclude that, in the circumstances of this case, the ALJ erred by determining that petitioner failed

to establish that Hooten "has become eligible for benefits because of the loss of employment with one or more other employers." We base that conclusion on the statutory text and undisputed facts in the record.

We understand the ALJ to have concluded, and the department to argue on review, that paragraph (b) was narrowly constructed by the legislature so that a loss of employment during the base year, but prior to the initial benefit year, cannot satisfy the requirement of ORS 657.471(9)(b). In this case, that understanding of the statute led to the ALJ's determination that petitioner failed to establish that Hooten "has become" eligible for benefits because of her loss of employment with Kaiser. The department argues that the legislature's choice of "has become" in paragraph (b) indicates that the legislature intended the department to focus exclusively on the time period immediately before Hooten filed her second claim for benefits, and in this case, on one specific reason for Hooten's eligibility (*i.e.*, being "underemployed"). Similarly, the ALJ concluded that because Hooten had not suffered a "loss of employment" in October 2012, petitioner could not establish eligibility for relief from charges.

At least in the circumstances presented here, we disagree that the application of ORS 657.471(9)(b) limited the department and the ALJ to the period immediately preceding Hooten's second claim for benefits. The legislature's choice of the present perfect tense—"has become"—does not indicate such a limitation. That tense is used to refer to an action that has happened at a time in the *indefinite* past or "a past action that comes up to and touches the present." *The Chicago Manual of Style* § 5.119, 178 (15th ed 2003). Accordingly, the plain text does not support the ALJ's conclusion that only a loss of employment in October 2012 could satisfy paragraph (b).

Moreover, the context of the statute demonstrates that the legislature likely did not intend to require a loss of employment in the period immediately preceding the second benefit year. Specifically, as a whole, ORS 657.471 contains several provisions that excuse a base year employer from charges related to a claimant when the payment of

unemployment benefits to that claimant are not "attributable" to the employer. For example, ORS 657.471(5) provides that an employer can obtain relief of charges if the claimant voluntarily left employment "for good cause not attributable to the employer" or the employer discharged the claimant because the claimant was "unable to satisfy a job prerequisite required by law or administrative rule." *See also* ORS 657.471(7) (relief from charges is available when a claimant left voluntarily and not for reasons attributable to the employer or when a claimant was discharged for misconduct). In that sense, the legislature has identified circumstances where the employer was not at "fault" for the payment of unemployment benefits to a claimant, and, therefore, should not be penalized in the form of higher taxes for payment of those benefits. Given that the legislature chose to provide relief to employers in those circumstances, it seems unlikely that the legislature intended ORS 657.471(9) to function in a manner that would increase unemployment taxes for an employer that provided part-time employment to a claimant who had been discharged from full-time employment with another employer during the base year. In sum, the ALJ's understanding of the statute—*i.e.*, requiring a loss of employment with another employer at the time of the application for a second benefit year—is incorrect.

Moreover, given that the statute is not limited in the manner that the department asserts, the undisputed facts in this case demonstrate that the ALJ erred when she concluded that petitioner failed to satisfy ORS 657.471(9)(b). That is, there is no independent provision in the unemployment statutes that would have made Hooten eligible for unemployment benefits for a second benefit year *solely* because of her part-time employment with petitioner. As the department appears to recognize, Hooten would not have been eligible for a second year of benefits if she had not become eligible for her first year of benefits based on her loss of employment with Kaiser. Further, her loss of employment with Kaiser occurred during the base year for her second claim, and the wages she earned with Kaiser during that base year were part of the calculation (along with her part-time wages) that made her eligible for the second benefit year. In those circumstances, the ALJ erred when she

concluded that petitioner failed to satisfy the requirement of ORS 657.471(9)(b).

Reversed and remanded.