This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                  **No. A-1-CA-34945**

**JOE RAY BARELA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Briana H. Zamora, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Laurie K. Blevins, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
J.K. Theodosia Johnson, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**VIGIL, Judge.**

{1}    Defendant Joe Ray Barela was found guilty by a jury of one count of auto burglary, one count of robbery, one count of tampering with evidence, one count of fraudulent use of an illegally obtained credit card (over $250 but less than $500), conspiracy to commit fraudulent signing of credit card or sales slips, two counts of possession of methamphetamine, one count of possession of drug paraphernalia, and one count of possession of marijuana.

{2}    Defendant appeals, making six arguments: (1) the evidence was insufficient to support his convictions for tampering with evidence, robbery, and auto burglary; (2) the jury was not instructed on all of the essential elements for conspiracy to commit fraudulent signing of a credit card or sales slips; (3) the district court erred in admitting into evidence: (a) a Walmart receipt and testimony indicating Victim's credit card number and showing the alleged fraudulent credit card transaction, and (b) narrative testimony about what was depicted in a surveillance video; (4) his convictions for (a) two counts of possession of methamphetamine, and (b) robbery and auto burglary violate double jeopardy; (5) his right to confront witnesses against him was violated when the prosecutor elicited testimony about Detective Perea's interview with the other suspect who is Defendant's mother; and (6) his sentencing hearing was tainted by inadmissible evidence and his sentence constitutes cruel and unusual punishment. We affirm in part and reverse in part.

**BACKGROUND**

{3}     As Victim sat in her vehicle parked in the driveway of her home, a "young man" later identified as Defendant, reached into her open car door and took her purse. Approximately an hour later, Defendant and his mother used Victim's credit card to purchase some jewelry from Walmart. Defendant and his mother returned to the Walmart two days later and attempted to return the jewelry with the original purchase receipt. Defendant and his mother were arrested by Walmart field officers, taken to the Albuquerque Police Department station, and interviewed by Detective Perea, who was investigating the robbery. Detective Perea also obtained a search warrant for Defendant's vehicle, in which methamphetamine and marijuana were found. Jewelry purchased from Walmart with Victim's credit card was also recovered from Defendant. We discuss additional facts as necessary to address Defendant's arguments on appeal.

**DISCUSSION**

**I.     Sufficiency of the Evidence**

{4}     Defendant argues that the evidence was insufficient to support his convictions for auto burglary, robbery, and tampering with evidence. We disagree.

{5}     In reviewing a defendant's challenge to the sufficiency of evidence, the appellate courts "view the evidence in the light most favorable to the guilty verdict,

indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Carrillo*, 2017-NMSC-023, ¶ 42, 399 P.3d 367 (internal quotation marks and citation omitted). The central consideration in a sufficiency of the evidence review is whether substantial direct or circumstantial evidence exists to support a verdict beyond a reasonable doubt as to all essential elements of the crimes for which the defendant was convicted. *State v. Suazo*, 2017-NMSC-011, ¶ 32, 390 P.3d 674. In jury trials, the jury instructions are the law of the case against which the sufficiency of the evidence supporting the jury's verdict is to be measured. *State v. Duttle*, 2017-NMCA-001, ¶ 18, 387 P.3d 885.

**A.    Auto Burglary**

{6}    Defendant contends that the State's evidence failed to prove auto burglary because Victim's car door was open when he reached in to take her purse. The jury was instructed, in pertinent part that to find Defendant guilty of auto burglary, the State was required to prove to its satisfaction beyond a reasonable doubt that Defendant "entered a vehicle without authorization[.]"

{7}    The evidence was that as Victim sat inside her car in her driveway, a "young man" later identified as Defendant reached into Victim's car through her open door, across her seat, and took her purse. Victim did not give Defendant permission to reach into her vehicle. This evidence was sufficient to establish an unlawful entry into

4

Victim's car notwithstanding that the door was open. *See State v. Office of the Pub. Def. ex rel. Muqqddin*, 2012-NMSC-029, ¶ 48, 285 P.3d 622 ("[A] burglary can be committed through an open window.").

**B.    Robbery**

{8}    Defendant contends that the State's evidence failed to prove that Defendant took Victim's purse by threat of force because Victim testified that by the time Defendant grabbed her purse, she "had no time to be afraid." The jury was instructed in pertinent part that to find Defendant guilty of robbery, the State was required to prove to its satisfaction beyond a reasonable doubt that Defendant took Victim's purse "by threatened force or violence[.]" The evidence was that as Defendant reached into Victim's car to take her purse, he told her, "Just give me your purse and you won't get hurt." Under our standard of review, this was substantial evidence that Defendant took Victim's purse by threatened force or violence.

**C.    Tampering with Evidence**

{9}    Defendant contends that the State's evidence failed to prove that Defendant took an overt act to disrupt an investigatory process.

{10}    The jury was instructed in pertinent part that to find Defendant guilty of tampering with evidence, the State was required to prove to its satisfaction beyond a reasonable doubt that Defendant "hid or reversed a vehicle to conceal a license

5

plate[,]" and that Defendant "intended to prevent the apprehension, prosecution or conviction of [Defendant] to create the false impression that another had committed a crime."

{11}     The evidence was that as Defendant arrived at Victim's home, he pulled his vehicle over on the side of the street, blocking Victim's car, without pulling into Victim's driveway. After taking Victim's purse, Defendant got back in his vehicle and drove in reverse "all the way down the street and out of sight." Victim testified that she "got out of the car, and I thought well, I will get his license plate number[.]" However, because the license plate on Defendant's vehicle was located on the back of the vehicle, as is the case for all vehicles registered in New Mexico, Victim could not see the license plate number as he fled.

{12}     We agree with the State that Defendant's conduct in fleeing the scene in this way "require[d] deliberate steps: putting the vehicle into reverse; looking at the rear view mirrors and out the back window; maintaining a straight course in reverse to avoid swerving off the roadway. Anyone who has ever driven understands it is impossible to drive backwards accidently." Further, considering the placement of the license plate on the back of his vehicle, Defendant's fleeing of the scene of the purse snatching by backing all the way down the street until he was out of sight was

6

consistent with an attempt to prevent Victim and law enforcement from being able to identify and apprehend him.

**{13}** This evidence supports a jury finding that by these overt acts, Defendant intended to prevent his apprehension, prosecution, conviction, or to create the false impression that another had snatched Victim's purse. *See State v. Schwartz*, 2014-NMCA-066, ¶ 35, 327 P.3d 1108 ("Tampering with evidence is a specific intent crime, requiring sufficient evidence from which the jury can infer that the defendant acted with an intent to prevent apprehension, prosecution, or conviction of any person or to throw suspicion of the commission of a crime upon another." (internal quotation marks and citations omitted)); *see also State v. Garcia*, 2011-NMSC-003, ¶ 13, 149 N.M. 185, 246 P.3d 1057 (stating that when there is no other evidence of the specific intent to disrupt the police investigation, intent is often inferred from an overt act of the defendant).

**II.    Jury Instruction on Conspiracy**

**{14}** The Use Note to the Uniform Jury Instruction on conspiracy, UJI 14-2810 NMRA, requires that in addition to the essential elements of conspiracy, the essential elements of the underlying felony must be included in the instructions to the jury. Because the essential elements for fraudulent signing of a credit card or sales slip were not given to the jury, Defendant contends, and the State concedes, that his conviction

7

for conspiracy to commit fraudulent signing of a credit card or sales slip must be reversed. We agree.

**{15}** "This Court . . . is not bound by the [s]tate's concession and we conduct our own analysis." *State v. Caldwell*, 2008-NMCA-049, ¶ 8, 143 N.M. 792, 182 P.3d 775. Defendant failed to object to the district court's failure to include in the instructions given to the jury an instruction containing the essential elements of fraudulent signing of a credit card or sales slips. We therefore review Defendant's challenge for fundamental error. *See State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (stating that when the error in jury instructions has not been preserved, appellate review is limited to review for fundamental error). "For fundamental error to exist, the instruction given must differ materially from the uniform jury instruction, omit essential elements, or be so confusing and incomprehensible that a court cannot be certain that the jury found the essential elements under the facts of the case." *Caldwell*, 2008-NMCA-049, ¶ 24 (internal quotation marks and citations omitted). Whether a particular jury instruction was properly given "is a mixed question of law and fact" that the appellate courts review de novo. *State v. Lucero*, 2010-NMSC-011, ¶ 11, 147 N.M. 747, 228 P.3d 1167 (internal quotation marks and citation omitted).

**{16}** The jury instruction on conspiracy given to the jury stated that in order to find Defendant guilty of conspiracy to commit fraudulent signing of credit cards or sales

slips, the State was required to prove beyond a reasonable doubt that: (1) "[D]efendant and another person by words or acts agreed together to commit fraudulent signing of credit cards or sales slips"; (2) "[D]efendant and another person intended to commit fraudulent signing of credit cards or sales slips"; and (3) "This happened in New Mexico on or about the 30th day of June, 2014." Use Note 1 to UJI 14-2810 requires that the jury also be given "the essential elements other than venue immediately after" the conspiracy instruction "unless they are covered by essential element instructions relating to the substantive offenses."

{17} No instruction on the essential elements of fraudulent signing of a credit card or sales slips, as stated in UJI 14-1688 NMRA, was included anywhere in the jury's instructions. Thus, the jury was not instructed on essential elements of the crime of conspiracy to commit fraudulent signing of a credit card or sales slips, giving rise to fundamental error. *See Benally*, 2001-NMSC-033, ¶¶ 16-20, 22 (concluding that the failure to include the essential element of unlawfulness in the instruction given to the jury for second-degree murder gave rise to fundamental error and warranted reversal of defendant's conviction on that count). Defendant's conviction for conspiracy to commit fraudulent signing of a credit card or sales slips must therefore be reversed.

**III.    Admission of Evidence**

9

{18} Under this point, we discuss Defendant's contentions that the district court erred in allowing certain evidence to be admitted at trial. "We review the admission of evidence under an abuse of discretion standard and will not reverse in the absence of a clear abuse." *State v. Lopez*, 2018-NMCA-002, ¶ 30, 410 P.3d 226 (internal quotation marks and citation omitted). "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *Id.* (internal quotation marks and citation omitted) "We cannot say that the trial court abused its discretion by its ruling unless we can characterize the ruling as clearly untenable or not justified by reason." *Id.* (alteration omitted); *see State v. Garcia*, 2016-NMCA-044, ¶ 8, 370 P.3d 791 (stating that "when there is no evidence that necessary foundational requirements are met [to support admission of evidence], an abuse of discretion occurs").

## A. Evidence That Victim's Credit Card Was Used

{19} Defendant argues that the district court erred in admitting a Walmart receipt obtained from Defendant and Defendant's mother showing a June 30, 2014 transaction for jewelry and the last four digits of a credit card number, together with Detective Perea's testimony that the numbers on the receipt are the last four digits of Victim's credit card number.

{20}    At trial, Victim testified, without objection, that after her purse was snatched, her credit card was used before she was able to cancel it. Detective Perea also testified, without objection, that Defendant's mother used Victim's credit card to purchase jewelry at Walmart on June 30, 2014. As a result, by the time Defendant objected to the admission of the Walmart receipt and Detective Perea's testimony that the numbers on the receipt matched the last four numbers on Victim's credit card, the jury had already heard evidence that Victim's credit cards had been used in a transaction that she had not authorized. The receipt and Detective Perea's testimony concerning Victim's credit card number were therefore cumulative of prior evidence that was admitted without objection. *See State v. Aaron*, 1984-NMCA-124, ¶ 28, 102 N.M. 187, 692 P.2d 1336 (stating that "[c]umulative evidence, even if prejudicial, may be admitted in the discretion of the trial court"). Defendant also fails to otherwise show that he was prejudiced by the admission of the evidence of Victim's credit card number and use. Under these circumstances, we see no reasonable probability that admission of this evidence contributed to Defendant's convictions. Therefore, even assuming error in the admission of the Walmart receipt and Detective Perea's testimony that the numbers on the receipt are the last four digits of Victim's credit card, any such error was harmless. *See Carrillo*, 2017-NMSC-023, ¶ 39 ("Improperly admitted evidence is not grounds for a new trial unless the error is determined to be

harmful."(internal quotation marks and citation omitted)); *State v. Astorga*, 2015-NMSC-007, ¶ 43, 343 P.3d 1245 ("Absent a constitutional violation, we look to whether there is a reasonable probability that the error affected the verdict.").

**B.      Narrative Testimony of the Surveillance Video**

{21}     Defendant argues that the district court erred in permitting Officer Meyer to testify about what was occurring in the Walmart surveillance video as it was played to the jury. Defendant contends that allowing Officer Meyer to testify about what was occurring on the video was inadmissible because she was not present when the video was taken and had no personal knowledge of the events it depicted. Because the jury was just as capable of watching the video and drawing its own conclusions about what was being depicted, Defendant contends that Officer Meyer's opinions about what was depicted was not helpful to a factual issue in dispute and invaded the province of the jury.

{22}     The State published home and Walmart surveillance videos to the jury and Officer Meyer provided contemporaneous testimony regarding what the jury was viewing. As the home surveillance video played for the jury, Officer Meyer testified without objection:

> This is [Victim's] front driveway. And it appears that she's pulled into
> her driveway there and she is parking. That's on James Street. And she
> in on the south side of the road. At this time, that's the gray Jeep that she

is describing, with the male exiting and him getting back into the vehicle and he's leaving.

The prosecutor then asked Officer Meyer "[b]ased upon the observation of the video, what stood out to you?" Officer Meyer answered, the male subject's "clothing. Being that I didn't have a visual of his face, other than what [Victim] described, his clothing and his vehicle. . . . He [was] wearing long, look[ed] like, denim shorts, like really long, with socks and a long kind of bigger, oversized [white] T-shirt. . . . The vehicle look[ed] like a dark gray, with almost gray or black border all the way around the Jeep. . . . It look[ed] like a Jeep Cherokee." Officer Meyer also testified that the description of the vehicle she observed matched "[a]lmost exactly" the description provided by Victim.

{23}     While clips from the Walmart surveillance videos were played to the jury, Officer Meyer testified "[t]his is the jewelry counter at the Walmart. As you can see, there's a male subject with a white T-shirt and long shorts with socks that's matching the description" of the purse snatcher. Officer Meyer continued that based on her observation of the video, the male subject matching the description of the purse snatcher appeared to be exchanging words with a female wearing a pink or reddish top and that they met up a couple times near the jewelry counter. Officer Meyer testified that at a certain point in the video, "there is a transaction going through at the jewelry counter with the clerk and the female in the pink shirt." Officer Meyer thereafter

testified that the same female appeared to purchase more items at the Walmart front checkout counters, that she then exited the front of the store, and that this female entered the passenger side of a gray Jeep Cherokee that matched the description of the purse snatcher's vehicle.

{24}     Defendant's objection to the testimony while the Walmart video was being played was that "[t]he video speaks for itself." Defendant argues on appeal that Officer Meyer's narrative "told the jury that ambiguous actions were crimes" and "conclusively identified" Defendant. Defendant contends the narrative was inadmissible and that "[t]he jury should have been allowed to watch [the video] and draw its own conclusions regarding the identity of the person in the video and his actions instead of being told they were witnessing [Defendant] commit a crime."

{25}     Even if we assume the district court erred in allowing Officer Meyer to give the narrative while the Walmart video was played and that Defendant preserved the argument he now makes on appeal, the error was harmless. As we have already noted, Victim testified, without objection, that her credit cards were used before she could cancel them, that the receipt collected from Defendant and his mother had four digits that matched Victim's credit card number, and that the receipt showed a transaction for jewelry which was time-stamped as occurring at the same time as the transaction in the surveillance video. Officer Perea also testified, without objection, that upon

viewing the Walmart surveillance video, the "female purchasing the . . . . jewelry from Walmart" was identified as a suspect for the fraudulent use of Victim's credit card.

{26} Importantly, Defendant stipulated to his own identity as the person identified as a suspect in Victim's case. During Officer Meyer's re-direct testimony and after a brief voir dire by defense counsel about the basis of her familiarity with Defendant, Defendant stipulated to the officer identifying him as a suspect identified in the case. The district court then instructed the jury that "[t]he parties have stipulated and, therefore, you can consider it as a fact in evidence in this case that the witness has identified the defendant Joe Ray Barela." The prosecutor asked, "for clarification, the individual seated here today, was this the individual you saw on additional Walmart surveillance that particular day on June 30, 2014?" and without objection, Officer Meyer answered, "Yes." Further, during Detective Perea's direct testimony, the prosecutor asked whether he had arrested a suspect in Victim's case, and he replied "[t]hat was [Defendant]." Defense counsel did not object and again remarked, "[w]e will stipulate to . . . [D]efendant."

{27} Finally, Officer Meyer was subsequently recalled to testify and was asked by the prosecutor if, when she watched the Walmart surveillance videos, whether she was able to clearly see the face of the male subject that fit the description of the purse

15

snatcher. Detective Perea answered, "Yes[,]" and that it was Defendant. Defendant did not object to this additional testimony.

{28} We conclude that in the foregoing context and by stipulating to Defendant's identity and failing to object to Officer Meyer and Detective Perea's identification of Defendant, the error, if any, in allowing Officer Meyer to give a narrative while the Walmart video was being played for the jury was harmless.

## IV. Double Jeopardy

{29} Defendant argues that his convictions for: (1) two counts of possession of methamphetamine, and (2) robbery and auto burglary each violate double jeopardy. "We review double jeopardy claims de novo." *State v. Sena*, 2018-NMCA-037, ¶ 34, 419 P.3d 1240.

## A. Two Convictions for Possession of Methamphetamine

{30} After Defendant was arrested at the Walmart, Defendant's vehicle was secured and Detective Perea obtained a warrant to search Defendant's vehicle. Within the vehicle Officer Perea found a small baggy of methamphetamine and a syringe containing methamphetamine residue. On the basis of this evidence Defendant was convicted of two separate counts of possession of methamphetamine. *See State v. Wood*, 1994-NMCA-060, ¶¶ 2-3, 12, 117 N.M. 682, 875 P.2d 1113 (affirming conviction for possession of cocaine where syringes had no visible trace of cocaine

16

but tested positive for cocaine in an amount less than 0.0001 gram). Defendant argues that there was only one possession of methamphetamine, and as such, one of his convictions for possession of methamphetamine must be vacated. We agree.

{31} In *State v. Quick*, a search of the defendant's bedroom resulted in the discovery of a container with 7.03 grams of methamphetamine, a quantity which was suggested was indicative of distribution; a container with 2.71 grams of methamphetamine; a container with 0.61 grams of methamphetamine, and other items indicative of drug use and sales. 2009-NMSC-015, ¶ 3, 146 N.M. 80, 206 P.3d 985. The defendant was convicted of simple possession of methamphetamine and possession with intent to distribute methamphetamine, and contended that the two convictions violated her right to be free from double jeopardy. *Id.* ¶ 1. Our Supreme Court concluded that "the entire quantity of a particular controlled substance under one person's control at any one time defines the possession." *Id.* ¶ 17. Our Supreme Court concluded that because the defendant's single possession of the multiple containers of methamphetamine "cannot reasonably be parsed into multiple possessions, double jeopardy prevents [the defendant] from being convicted of both possession and possession with intent to distribute." *Id.* ¶ 21.

{32} The reasoning of *Quick* compels us to conclude that there was only one possession of methamphetamine in this case. In *Quick*, our Supreme Court held that

17

the defendant's simultaneous possession of three containers of methamphetamine constituted one possession. Here, Defendant simultaneously possessed two containers of methamphetamine, the syringe with residue and a baggy. One of Defendant's convictions for possession of methamphetamine therefore violated double jeopardy and must be vacated.

**B.      Convictions for Robbery and Auto Burglary**

{33}     Defendant also argues that his convictions for robbery and auto burglary, which stemmed from the same conduct and both constitute crimes against property, subjected him to multiple punishments under different statutes, and as such, one conviction should be vacated. We disagree.

{34}     Even where the same conduct results in the commission of robbery and auto burglary, because these are separate and distinct crimes with differing elements, there is no double jeopardy prohibition against convicting Defendant of both crimes. *See State v. Deats*, 1971-NMCA-089, ¶ 22, 82 N.M. 711, 487 P.2d 139 (concluding that convictions for burglary and larceny arising out of the same event do not violate double jeopardy); *see also State v. McAfee*, 1967-NMSC-139, ¶¶ 15-18, 78 N.M. 108, 428 P.2d 647 (same). This is a "double description" case, which looks to whether the Legislature intended to punish the offenses separately since Defendant's conduct here is clearly unitary. *See State v. Silvas*, 2015-NMSC-006, ¶ 9, 343 P.3d 616. Because

18

the statutes do not clearly prescribe multiple punishments, we apply the rule of statutory construction established in *Blockburger v. United States*, 284 U.S. 299 (1932). *See State v. Swick*, 2012-NMSC-018, ¶ 11, 279 P.3d 747. Under *Blockburger*, we look to see whether each statute requires proof of a fact that the other does not. *See Swick*, 2012-NMSC-018, ¶ 12. "If one statute requires proof of a fact that the other does not, then the Legislature is presumed to have intended a separate punishment for each statute without offending principles of double jeopardy." *Silvas*, 2015-NMSC-006, ¶ 12. This is the same test used in *Deats* and *McAfee*. Robbery requires proof an actual "theft of anything of value" from a person "by use or threatened use of force or violence[,]" NMSA 1978, § 30-16-2 (1973), but burglary requires neither an actual theft or the use of a threat of force or violence. Rather, burglary only requires "unauthorized entry[,]" including into a vehicle, "with the intent to commit any felony or theft therein." NMSA 1978, Section 30-16-3 (1971). We therefore presume that the Legislature intended a separate punishment for each statute without offending principles of double jeopardy, and Defendant's convictions for robbery and burglary do not violate double jeopardy.

**V.	Confrontation Clause Claim**

{35}	Defendant and his mother both gave statements to Detective Perea following their arrest. Defendant's redacted statement was introduced into evidence through

Detective Perea. The prosecutor then asked Detective Perea if Defendant's mother, who passed away before the trial, related how she came into possession of Victim's credit cards and if she later changed that story because the first was not true. Detective Perea simply answered, "Yes" and did not testify to what she specifically said. The prosecutor then asked Detective Perea, "Without saying what she said, did the story that she gave you match what [Defendant] told you in his interview?" Defendant objected, stating that the question sought to elicit impermissible impeachment testimony by Detective Perea commenting on the truthfulness of Defendant and his mother. The district court overruled Defendant's objection. The prosecutor then asked Detective Perea again whether the statement Defendant gave during his interview was consistent with the statement given by his mother during her interview, to which the detective answered, "No."

**{36}** Defendant contends that allowing Detective Perea to answer whether the statements by Defendant and his mother were consistent violated his constitutional confrontation rights. The State responds that with regard to the testimony challenged by Defendant, Defendant failed to preserve a confrontation clause error and has therefore waived the objection for appellate purposes. We agree.

**{37}** Rule 11-103(A)(1) NMRA requires that in order to preserve a claim for error, a party must make a timely objection and state the specific ground for the objection,

20

unless it is apparent from the context. Additionally, "[t]he issue of denial of the right to confrontation may not be raised for the first time on appeal." *State v. Lucero*, 1986-NMCA-085, ¶¶ 12, 104 N.M. 587, 725 P.2d 266. In *Lucero*, we determined that the defendant's hearsay objection to the admission of his co-defendant's confession was insufficient to preserve a confrontation claim where he merely objected that admission of the statement did not fall within a hearsay objection. *Id.* ¶¶ 15-17. Here, Defendant's objection that the prosecutor's question sought to elicit improper impeachment testimony was likewise insufficient to preserve a confrontation clause claim.

## VI.    Defendant's Sentence

{38}    Defendant's final argument, pursuant to *State v. Franklin*, 1967-NMSC-151, ¶¶ 9-10, 78 N.M. 127, 428 P.2d 982 and *State v. Boyer*, 1985-NMCA-029, ¶ 17, 103 N.M. 655, 712 P.2d 1, is that his sentence constitutes cruel and unusual punishment. Defendant's argument is that his sentence to fifty years of incarceration as a habitual offender is grossly disproportionate to his crimes and that his sentencing hearing was tainted by inadmissible evidence in the form of a letter from the alleged victim of a crime for which Defendant was acquitted. For the following reasons, we reject Defendant's arguments under this point.

21

**{39}** While we review the constitutional issue of whether punishment is cruel and unusual de novo, sentencing, in the absence of a challenge to the constitutionality of the sentencing statute at issue, is reviewed only for an abuse of discretion. *State v. Dwyer*, No. 33,234, dec. ¶ 11 (N.M. Sup. Ct. Mar. 21, 2013) (non-precedential); *State v. Lindsey*, 2017-NMCA-048, ¶ 22, 396 P.3d 199.

**{40}** Defendant does not challenge the constitutional validity of the statutes under which he was sentenced, and Defendant's sentence was not clearly against the logic and effect of the facts and circumstances of the case. At his sentencing hearing, Defendant objected to the admission of the letter from the alleged victim of a violent felony for which he was acquitted. The district court responded that the letter had not been put in the record and that the court would not consider the letter in its sentencing, since Defendant was acquitted of the alleged crime. This action of the district court adequately assured that the letter did not taint Defendant's sentencing. The district court also determined that Defendant had three previous felony convictions that could be used to enhance Defendant's sentence by eight years per charge. *See* NMSA 1978, § 31-18-17(C) (2003) (stating that if an individual has three prior felony convictions, the "basic sentence shall be increased by eight years. The sentence imposed by this subsection shall not be suspended or deferred."). At this point, as the State points out, the district court "had very little discretion regarding the sentences [it] had to impose."

Furthermore, with what little discretion the district court had, it was exercised in Defendant's favor. Specifically, the district court allowed Defendant's robbery and auto burglary sentences, as well as Defendant's possession of marijuana and paraphernalia charges, to be served concurrently.

**CONCLUSION**

{41}    Defendant's conviction for conspiracy to fraudulently sign a credit card or sales slip and one conviction for possession of methamphetamine are vacated. We affirm the remainder of Defendant's convictions and remand for re-sentencing in accordance with this opinion.

{42}    **IT IS SO ORDERED.**


_____
**MICHAEL E. VIGIL, Judge**


**WE CONCUR:**


_____
**M. MONICA ZAMORA, Judge**


_____
**JULIE J. VARGAS, Judge**

23